UNITED STATES, Appellee

V.

Sean G. GRIGORUK, Staff Sergeant
U.S. Army, Appellant

No. 98-1089

Crim. App. No. 9600949

_____

United States Court of Appeals for the Armed Forces

Argued November 28, 2001

Decided February 15, 2002

GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., EFFRON and BAKER, JJ., and
SULLIVAN, S.J., joined.

<u>Counsel</u>

For Appellant:  <u>Karen L. Hecker</u> (argued); <u>Colonel Adele H.
Odegard</u> (on brief); <u>Eugene R. Fidell</u> and <u>Captain Steven P.
Haight</u>.

For Appellee:  <u>Captain Karen J. Borgerding</u> (argued); <u>Colonel
Steven T. Salata</u>, <u>Lieutenant Colonel Denise R. Lind</u>, and
<u>Major Margaret B. Baines</u> (on brief).

Military Judge:  Robert F. Holland


<u>**This opinion is subject to editorial correction before final publication**</u>.

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of multiple sexual offenses (rape, forcible sodomy, and committing indecent acts) with a child under the age of sixteen, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 920, 925, and 934, respectively.  The adjudged and approved sentence provides for a dishonorable discharge, confinement for twenty years, total forfeitures, and reduction to the lowest enlisted grade.  The Court of Criminal Appeals has twice affirmed the findings and sentence in unpublished opinions.  Before this Court, appellant contends that his trial defense counsel provided ineffective assistance.  For the reasons set out below, we affirm.

## Trial and Appellate History

Appellant's stepdaughter accused him of child sexual abuse, beginning when she was four years old and continuing for several years, until she told a babysitter about it.  The victim was nine years old at the time of appellant's court-martial.  Appellant testified and denied committing the offenses.  There was no direct medical evidence to support the victim's accusation, but the prosecution presented a stipulation of the expected testimony of Dr. Deborah Bryant, who examined the victim and opined that a normal, genital-rectal examination does not necessarily mean that a child has not been abused.

The court-martial was essentially a credibility contest between appellant and the child.  Prior to the trial on the

2

merits, the military judge granted a defense request for funds to hire Dr. Ralph Underwager or a suitable substitute as an expert witness.  Dr. Underwager had not examined the victim, but he was expected to testify, in response to hypothetical questions, as follows:

> (1) A conflicted family environment, particularly divorce, and separation from parents may influence a child to fabricate stories of abuse;
>
> (2) Children are more suggestible than adults, and frequent, repeated questioning of children can actually teach or reinforce a false story; and
>
> (3) The initial assumptions of a child interviewer are a powerful determinant of what the child reports at the interview.

Despite this favorable ruling, the trial defense counsel did not present any expert testimony at trial.

> On initial review, this Court granted review of two issues:
>
> I. WHETHER TRIAL DEFENSE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO (1) CALL AN EXPERT WITNESS WHO WOULD PROVIDE CREDIBLE EVIDENCE THAT SUPPORTED THE DEFENSE'S THEORY OF THE CASE; (2) CROSS-EXAMINE A NUMBER OF WITNESSES REGARDING PERTINENT FACTS IN DISPUTE; AND (3) STIPULATED TO DAMNING EVIDENCE.
>
> II. WHETHER THE REVIEWING COURT CONDUCTED MEANINGFUL APPELLATE REVIEW WHEN IT FAILED TO ORDER TRIAL DEFENSE COUNSEL TO SUBMIT AN AFFIDAVIT WHEN A VIABLE CLAIM FOR INEFFECTIVE ASSISTANCE OF COUNSEL HAD BEEN RAISED.

This Court held that appellant had met the threshold for further inquiry concerning his claim of ineffective assistance of counsel.  The court below was directed to request an affidavit from trial defense counsel explaining why Dr. Underwager or any other expert was not called to challenge the victim's credibility.  The court below was further directed to obtain additional evidence if necessary, conduct any factfinding consistent with United States v. Ginn, 47 MJ 236 (1997), and

3

reconsider appellant's claim of ineffective assistance. 52 MJ 312, 315-16 (2000).

Trial defense counsel submitted an affidavit in which he recited that his initial decision to request Dr. Underwager was on recommendation of another lawyer. He obtained some written information from Dr. Underwager to support his request for funding to hire him. He found the information "very basic, but helpful." He used the information "to develop witness questions, organize [his] argument, and generally support the theory of the case." In his affidavit, trial defense counsel states that, after speaking with Dr. Underwager "on more than one occasion," he became concerned about Dr. Underwager's references to "false claims" and the "documents" he carried to rebut them.

Trial defense counsel's decision to seek an expert was "in large measure" to counter the anticipated testimony of the Government's expert, Mr. Richard Pitcock, a psychological examiner who interviewed and evaluated the victim. Mr. Pitcock testified at the pretrial investigation[1] that the victim "had age inappropriate knowledge of sexual activities."

At a pretrial motion hearing, the prosecution informed the military judge that "if this court's ruling, concerning Doctor Underwager, is triggered by our proffer or intent to call Mr. Pitcock, the Government would state that it would not call Mr. Pitcock in that event." The prosecution proffered that if Mr. Pitcock testified, his testimony would be limited to stating that he gave the victim various tests and that "she's a child of

---

[1] See Art. 32, UCMJ, 10 USC § 832.

4

normal intellect and normal ability to recall and understand events." The prosecution also indicated that it would offer the victim's statements to Mr. Pitcock. Finally, the prosecution indicated that Mr. Pitcock might testify in rebuttal, "depending on how the case -- the defense case came out."

After the motions hearing, the prosecution agreed to stipulate to the testimony of Dr. Bryant, who had conducted the genital-rectal examination of the victim. In his affidavit, trial defense counsel explains, "At that point, any tactical need to balance their expert's testimony at trial was gone." When the case ultimately was tried on the merits, the prosecution did not call any experts to testify in person.

The prosecutor also showed trial defense counsel "a detailed format for attacking Dr. Underwager." Trial defense counsel recites in his affidavit that, "by that time, [he] had pretty much already decided against using him." He recites further that he was concerned with the court members thinking he was "trying to pass off a 'quack' on them." Finally, trial defense counsel explains that "[t]he potential danger of having to litigate Dr. Underwager's credibility or having another expert open the door for Mr. Pitcock's appearance far outweighed the foreseeable impact of the granted testimony, the substance of which I argued to the panel anyway."

After considering trial defense counsel's affidavit and determining that no additional factfinding hearing was necessary, the court below concluded, in an unpublished opinion, that trial defense counsel had established reasonable, tactical and strategic reasons for forgoing the testimony of Dr. Underwager or

any other expert.  Appellant again petitioned this Court for review, and we granted review of the following issue:

> WHETHER TRIAL DEFENSE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN THEY FAILED TO EMPLOY A REPUTABLE EXPERT TO CONSULT WITH THEM ON THE CASE AND TO PROVIDE CREDIBLE EVIDENCE THAT SUPPORTED THE DEFENSE'S THEORY OF THE CASE, WHICH MANDATES THAT THIS COURT SET ASIDE APPELLANT'S CONVICTION.

In this second review of appellant's claim of ineffective assistance of counsel, he has broadened his attack on trial defense counsel, adding an allegation that he failed to employ a reputable expert for consultation.

## Discussion

We review issues of ineffective assistance of counsel de novo.  United States v. Wean, 45 MJ 461, 463 (1997).  On appellate review, there is a "strong presumption" that counsel was competent.  Strickland v. Washington, 466 U.S. 668, 689 (1984).  This Court applies the following three-pronged test to determine if the presumption of competence has been overcome:

> (1) Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions?";
>
> (2) If the allegations are true, did defense counsel's level of advocacy fall "measurably below the performance . . . [ordinarily expected] of fallible lawyers?"; and
>
> (3) If defense counsel was ineffective, is there a "reasonable probability that, absent the errors," there would have been a different result?

United States v. Polk, 32 MJ 150, 153 (CMA 1991).

Applying this test, we hold that trial defense counsel was not ineffective.  Trial defense counsel did not elaborate on Dr. Underwager's reference to "false claims" and his rebuttal "documents."  Likewise, he did not describe the prosecution's

plan to discredit Dr. Underwager.  Nevertheless, trial defense counsel's concerns about litigating Dr. Underwager's credibility as a witness were not unfounded.

In Underwager v. Salter, 22 F.3d 730 (1994), the Seventh Circuit rejected Dr. Underwager's appeal from an adverse summary judgment against him in a defamation lawsuit.  Dr. Underwager sued the authors of an article in the Journal of the American Medical Association (JAMA) criticizing his work.  The Seventh Circuit observed that "Underwager's approach has failed to carry the medical profession, but it has endeared him to defense lawyers."  Id. at 732.  The court summarized an interview on a television program, "60 Minutes Australia," in which the JAMA reviewer mentioned Dr. Underwager's view that ninety percent of all accusations of child molestation are unfounded and characterized it as "gobbledygook."  Id.[2]  The court's opinion also recites, "Underwager served on the board of the False Memory Syndrome Foundation until resigning after being quoted as telling a Dutch journal that sex with children is a 'responsible choice for the individual.'"  Id. at 734; see also Commonwealth v. Perkins, 658 N.E.2d 975, 978 (Mass.App.Ct. 1995) (holding that it was not improper to impeach Dr. Underwager by referring to his statements endorsing pedophilia as an "acceptable and reasonable lifestyle"); State v. Swan, 790 P.2d 610, 632 (Wash. 1990) (Supreme Court of Washington upheld trial court's ruling that Dr. Underwager's proffered testimony was not based on independent

---

[2] This comment resulted in another defamation action, which also was summarily resolved against Dr. Underwager.  See Underwager v. Channel 9 Australia, 69 F.3d 361 (9th Cir. 1995).

research, but was undertaken at the behest of the insurance industry for use in civil claims for child sexual abuse, and that the record "does not sufficiently establish the reliability of the expert's methodology, factors, or the principles which he proposed to use in his testimony.").

The record before us demonstrates that trial defense counsel sought an expert to counter anticipated government experts. He contacted Dr. Underwager on the recommendation of a colleague. He obtained written information from Dr. Underwager as the basis for his request to the military judge. He found Dr. Underwager's written information "very basic, but helpful." He also talked to Dr. Underwager on the telephone and used the information obtained from Dr. Underwager to prepare for trial.

Trial defense counsel concluded that he might not need Dr. Underwager to testify as an expert after the Government decided not to present expert testimony. He concluded, based on his review of the prosecution's plan of attack, that Dr. Underwager's credibility would be heavily attacked, and that the credibility of the defense case might be undermined if the defense was perceived as using a "quack" as an expert. Based on all these factors, trial defense counsel decided not to use Dr. Underwager as an expert witness. We hold that there was a reasonable explanation for this action.

Regarding the failure of trial defense counsel to request another suitable expert witness, we note that, even though over five years have passed since appellant's conviction, and his case has worked its way up the appellate chain twice, neither appellant nor his counsel have demonstrated that any other expert

could have provided expert testimony sufficient to raise the reasonable probability of a more favorable result. Cf. United States v. McAllister, 55 MJ 270 (2001) (defense informed military judge that requested expert could not provide needed assistance and identified another expert who could).

Regarding trial defense counsel's failure to employ another expert for consultation, his affidavit states that he talked with Dr. Underwager and obtained helpful information, which he used to develop his trial strategy. Appellant has not asserted or demonstrated that what Dr. Underwager told trial defense counsel was incorrect or deficient, nor has appellant identified any other consultant, by name or qualifications, who should have been consulted.

Based on this appellate record, we hold that appellant has not overcome the strong presumption of competence. He has not demonstrated that trial defense counsel's performance was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

## Decision

The decision of the United States Army Court of Criminal Appeals is affirmed.