IN THE CASE OF

UNITED STATES, Appellee

v.

Fernando GARCIA, Staff Sergeant
U.S. Marine Corps, Appellant

No. 03-0151

Crim. App. No. 9901513

United States Court of Appeals for the Armed Forces

Argued January 22, 2004

Decided May 6, 2004

ERDMANN, J., delivered the opinion of the Court, in which
GIERKE, EFFRON, and BAKER JJ., joined. CRAWFORD, C.J., filed a
dissenting opinion.

Counsel

For Appellant:  Lieutenant Robert E. Salyer, JAGC, USNR
(argued); Lieutenant Glenn Gerding, JAGC, USNR, and Lieutenant
Colin A. Kisor, JAGC, USNR (on brief).

For Appellee:  Lieutenant Lars C. Johnson, JAGC, USNR (argued);
Colonel R. M. Favors, USMC, and Commander Robert P. Taishoff,
JAGC, USN (on brief).

Amicus Curiae:  Alexander N. Pickands (law student) (argued);
Frederic I. Lederer, Esq. (supervising attorney), John M. Hackel
and Christopher R. Clements (law students) (on brief) – for the
College of William & Mary School of Law.

Military Judge:  R. E. Nunley

**This opinion is subject to editorial correction before final
publication.**

United States v. Garcia, No. 03-0151/MC

Judge ERDMANN delivered the opinion of the Court.

Appellant, Staff Sergeant Fernando Garcia, was charged with two specifications of attempted robbery, five specifications of conspiracy to commit robbery, one specification of conspiracy to commit larceny, three specifications of larceny, six specifications of robbery, one specification of housebreaking, four specifications of interstate transport of stolen property, and four specifications of receiving stolen property in violation of Articles 80, 81, 121, 122, 130, and 134 of the Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 880, 881, 921, 922, 930, and 934 (2000), respectively. Garcia entered pleas of not guilty to all specifications and charges and was tried before a general court-martial. He was found guilty of all charges, other than the four specifications of receiving stolen property which were withdrawn prior to findings.

Garcia was sentenced by a panel of members to a dishonorable discharge, confinement for 125 years, forfeiture of all pay and allowances, a fine of $60,000 and reduction to the lowest enlisted grade (E-1). The convening authority reduced the term of confinement to 75 years, suspended all confinement in excess of 40 years, and otherwise affirmed the sentence. The Navy-Marine Corps Court of Criminal Appeals affirmed the findings of guilty and the sentence. United States v. Garcia, 57 M.J. 716 (N-M. Ct. Crim. App. 2002).

United States v. Garcia, No. 03-0151/MC

    We granted review of the following issues pursuant to

Article 67(b), UCMJ, 10 U.S.C. § 867(b) (2000):[1]

   I.    WHETHER THE LOWER COURT ERRED WHEN IT HELD THAT
         APPELLANT'S ON-PREMISES OBJECTION TO THE NCIS SEARCH OF
         HIS HOME DID NOT PREVAIL OVER HIS WIFE'S OFF-PREMISES
         CONSENT TO A SEARCH OF THE HOME.

   II.   WHETHER THE LOWER COURT ERRED WHEN IT HELD THAT THE
         ABSENCE OF AN ARTICLE 32 HEARING IN APPELLANT'S GENERAL
         COURT-MARTIAL DOES NOT REQUIRE A COMPLETE REVERSAL.

   III.  WHETHER APPELLANT RECEIVED EFFECTIVE ASSISTANCE OF
         COUNSEL.  (IN ADDITION TO THE SEVEN MATTERS RAISED BY
         APPELLANT IN HIS PETITION SUPPLEMENT, THE PARTIES SHOULD
         ADDRESS THE FOLLOWING: (1) WHETHER TRIAL DEFENSE COUNSEL
         WAS INEFFECTIVE IN NOT OBJECTING TO ADMISSION OF EVIDENCE
         OBTAINED FROM THE SEARCH DESCRIBED IN ISSUE I; (2)
         WHETHER TRIAL DEFENSE COUNSEL WAS INEFFECTIVE IN NOT
         OBJECTING TO THAT PORTION OF TRIAL COUNSEL'S SENTENCING
         ARGUMENT DESCRIBED IN ISSUE IV; AND (3) WHETHER TRIAL
         DEFENSE COUNSEL WAS INEFFECTIVE IN NOT ADVISING APPELLANT
         REGARDING THE POSSIBILITY OF OBTAINING A PLEA AGREEMENT
         BEFORE OFFERING THE CONFESSIONAL TESTIMONY DESCRIBED IN
         ISSUE V).

   IV.   WHETHER THE LOWER COURT ERRED WHEN IT HELD THAT TRIAL
         COUNSEL'S SENTENCING ARGUMENT WAS NOT IMPROPER.

   V.    WHETHER THE LOWER COURT ERRED WHEN IT HELD THAT THE
         MILITARY JUDGE HAD NO DUTY TO ADVISE APPELLANT OF HIS
         RIGHTS PURSUANT TO UNITED STATES V. BERTELSON, 3 M.J. 314
         (C.M.A. 1977) AND UNITED STATES V. WILLIAMS, 18 M.J. 186
         (C.M.A. 1984) AND RULED THAT APPELLANT'S CONFESSIONAL
         STIPULATION DID NOT AMOUNT TO A CONFESSIONAL STIPULATION
         AND A DE FACTO GULTY PLEA.


    We hold that Garcia received ineffective assistance of counsel

---

[1] We heard oral argument in this case at the William and Mary
School of Law, Williamsburg, Virginia, as part of the Court's
"Project Outreach."  See United States v. Mahoney, 58 M.J. 346,
347 n.1 (C.A.A.F. 2003).

at his court-martial, and therefore reverse on Issue III.  In light of that disposition, we do not reach the remaining issues.

FACTS

In October 1997 Garcia was apprehended outside of his home in Jacksonville, North Carolina, by agents of the Naval Criminal Investigative Service who suspected that he and various coconspirators had engaged in a string of criminal activity, including armed carjackings, armed robberies, and burglary.  After his apprehension, Garcia retained a civilian defense counsel to represent him along with his military defense counsel.  His civilian defense counsel, Bruce Cockshoot, signed a written waiver on behalf of Garcia which unconditionally waived Garcia's right to an investigation pursuant to Article 32, UCMJ, 10 U.S.C. § 832 (2000).  Garcia subsequently stated that he knew nothing of the waiver until after his conviction and would not have authorized it had he known.[2]  The lack of an Article 32 investigation was not raised at trial.

Prior to trial, Garcia's civilian defense counsel advised Garcia that he should not agree to enter into a pretrial agreement that called for confinement of more than four to six

_____

[2] The Government was unable to locate Mr. Cockshoot to obtain his version of events and military defense counsel was unable to remember many details due to the passage of time.  Thus, the facts relevant to representation offered by Garcia in a post-trial declaration are unrebutted.  See United States v. Ginn, 47 M.J. 236, 248 (C.A.A.F. 1997).

4

years.  Garcia's military defense counsel, on the other hand, advised him that a sentence in excess of 40 years was likely if they went to trial and informed him that the Government would probably agree to a plea agreement limiting confinement to 20-25 years.[3]  Garcia, apparently relying on the advice of his civilian attorney, chose not to enter into a plea agreement. Approximately three weeks before the court-martial, Mr. Cockshoot's representation ended and Garcia was represented only by his military defense counsel for the remainder of the proceedings.

Initially, Garcia did not admit to his military counsel the degree of his involvement in the charged offenses.  However, after three days of the trial, military defense counsel met with Garcia and indicated to Garcia that the defense was getting "killed" by the Government evidence.  At this point, Garcia informed his military counsel of the full extent of his culpability.  Faced with this disclosure in mid-trial, defense counsel advised Garcia that they should allow the Government to finish its case and then have Garcia testify that he had committed the charged activity, in the hope that the members

---

[3] We note that Garcia was exposed to a substantial maximum sentence in this case.  Based upon the findings of guilty, the military judge instructed the members that the maximum sentence included, inter alia, confinement for 260 years.

would be lenient if Garcia candidly accepted responsibility. Garcia followed this advice. His attorney did not discuss any other possible options available to him at that time, and Garcia later stated that he was unaware that he could have changed his plea to guilty.

During sentencing arguments, the Government asked the members to return a sentence that included a fine of $23,000 and confinement for 86 years. The members returned a sentence that included a fine of $60,000 and confinement for 125 years.

## DISCUSSION

Garcia alleges that he received ineffective assistance of counsel at his court-martial. Under Strickland v. Washington, 466 U.S. 668, 687 (1984), Garcia must show both that counsel's performance was deficient and that the deficiencies were so serious as to deprive him of a fair trial. Moreover, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Lousiana, 350 U.S. 91, 101 (1955)).

This Court applies a three prong test to determine if the presumption of competence has been overcome:

(1) Are the allegations true; if so, "is there a reasonable explanation for counsel's actions?";

6

     (2)   If the allegations are true, did defense counsel's level of advocacy fall "measurably below the performance . . . [ordinarily expected] of fallible lawyers?"; and

     (3)   If defense counsel was ineffective, is there a "reasonable probability that, absent the errors," there would have been a different result?

United States v. Grigoruk, 56 M.J. 304, 307 (C.A.A.F. 2002) (citing United States v. Polk, 32 M.J. 150, 153 (C.M.A. 1991)). We evaluate the combined efforts of the defense as a team rather than evaluating the individual shortcomings of any single counsel. United States v. McConnell, 55 M.J. 479, 481 (C.A.A.F. 2001).

Applying the Grigoruk three prong test, we find that Garcia received ineffective assistance of counsel in two significant respects: (1) his civilian defense counsel waived the Article 32 investigation without Garcia's agreement; and (2) his military defense counsel inexplicably failed to advise Garcia of the range of options he faced when he eventually confessed his full involvement to counsel near the conclusion of the Government's case-in-chief and thereafter failed to demonstrate a sound trial strategy in the presentation of Garcia's case. We will consider each of these deficiencies separately. Given our conclusion that these two deficiencies prejudiced Garcia, we need not address the other alleged deficiencies in the defense team performance.

United States v. Garcia, No. 03-0151/MC

1.  The Article 32 Investigation

Article 32 requires "a thorough and impartial investigation" before any charges or specifications may be referred to a general court-martial.  At the investigation, the accused has the right to be represented by counsel, to cross-examine witnesses, and "to present anything he may desire in his own behalf."  Article 32, UCMJ.  The Article 32 investigation "operates as a discovery proceeding for the accused and stands as a bulwark against baseless charges."  United States v. Samuels, 10 C.M.A. 206, 212, 27 C.M.R. 280, 286 (1959).  The procedures, rights and duties applicable to an Article 32 investigation are specified in Rule for Courts-Martial 405 [R.C.M.].

Pursuant to R.C.M. 405(k), "[t]he accused may waive an [Article 32] investigation under this rule."  The precise form or procedure for a waiver is not specified, and whether the accused's right to an Article 32 investigation is personal to the accused is an issue of first impression at this Court.  As the Supreme Court has noted, "What suffices for waiver depends on the nature of the right at issue. 'Whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.'"  New York v. Hill, 528 U.S. 110, 114 (2000)(quoting

8

United States v. Garcia, No. 03-0151/MC

United States v. Olano, 507 U.S. 725, 733 (1993)).  Garcia argues that his personal consent to the waiver of his right to an Article 32 investigation was required and we agree.

On this record, it is undisputed that Garcia's civilian defense counsel waived Garcia's right to an Article 32 investigation without Garcia's personal consent.  We recognize that in many situations consent or waiver by counsel is binding, whether or not the client has personally consented or explicitly agreed to waive a matter.  "As to many decisions pertaining to the conduct of the trial [e.g., what evidentiary objections to raise or what agreements to conclude regarding the admission of evidence], the defendant is 'deemed bound by the acts of his lawyer-agent . . . .'"  Hill, 528 U.S. at 115 (quoting Link v. Wabash R. Co., 370 U.S. 626, 634 (1962)).

However, the decision whether to waive a pretrial investigation is unlike the many routine decisions a lawyer must make as the trial progresses.  It is, rather, a decision fundamentally impacting a "substantial pretrial right" of the accused.  See United States v. Chuculate, 5 M.J. 143, 145 (C.M.A. 1978).  Our treatment of Article 32 waivers in pretrial agreements, for example, reflects that the right is personal to the accused and we have tasked military judges with ensuring that the waiver is freely given and fully understood.  See United States v. Schaffer, 12 M.J. 425, 429 (C.M.A.

9

1982)("[T]here are obvious reasons why a military accused, with the advice of counsel, may wish to initiate a waiver of an Article 32 investigation[.]"); see also R.C.M. 910(f). We agree with Garcia that the right to an Article 32 investigation is a personal right, and in most instances cannot be waived without a defendant's informed consent.

It is possible that under other circumstances waiver of an Article 32 investigation without the client's personal consent would not constitute ineffective assistance of counsel under either or both prongs of Strickland, for example where there is good cause for the failure to obtain personal consent, a sound tactical decision or a lack of resultant prejudice. Here, however, we see no such saving circumstances. We perceive no sound strategic reasons for the waiver itself, and the record reveals no benefit for Garcia in exchange for giving up his right to an Article 32 investigation.

On the contrary, the record demonstrates that Garcia was prejudiced. He did not have the opportunity to hear the Government's case against him and to assess the potential strength of that case. If he had seen the case against him prior to rather than in the midst of the trial, he might have sought a plea agreement which would have limited his sentence. The Government argues that it could have chosen to put on only a "bare-bones" case at the Article 32 investigation, and thus

Garcia still might not have seen enough of the Government's case to persuade him to enter into a plea agreement. This argument is based on a faulty premise: it is not the Government that controls the Article 32 investigation, but rather an investigating officer charged with making a thorough and impartial investigation into the form and substance of the charges, which includes the examination of available witnesses requested by the accused. Article 32, UCMJ; R.C.M. 405.

Under these circumstances, we find that defense counsel's action in waiving Garcia's right to an Article 32 investigation without Garcia's personal consent fell measurably below the performance ordinarily expected of fallible lawyers, and that there is a reasonable probability of a different result absent that action. See Grigoruk, 56 M.J. at 307.

2. The Mid-Trial Advice to Confess

As noted, Garcia did not disclose the full extent of his involvement to his military counsel until three days into the presentation of the Government's evidence. At that point, defense counsel, who remained bound by the requirement to take only those actions that were in the best interests of his client, was left with a range of problematic options, including exploring of the possibility of a plea agreement, changing his plea to guilty, having Garcia remain silent, or having Garcia confess and throw himself on the mercy of the court without

changing his plea.  At this strategic crossroads, defense counsel had the responsibility of explaining these options to his client and obtaining the client's fully informed consent as to which path to follow.  See Strickland, 466 U.S. at 688 (noting that counsel's duties include consulting with the defendant on important decisions, keeping the defendant informed of important developments, and bringing to bear "such skill and knowledge as will render the trial a reliable adversarial testing process").

Instead, defense counsel inexplicably chose to advise Garcia of a single and arguably the least tenable option. Counsel failed to inform or discuss with Garcia any other options.  We find no reasonable explanation for defense counsel's failure to advise his client of the range of options open to him.  His performance in this regard fell measurably below that standard ordinarily expected of fallible lawyers.

Relying on this limited, deficient advice, Garcia, the sole witness in the defense case-in-chief, fully detailed his involvement and the actions of his co-conspirators in the charged offenses.  Defense counsel explained to the members that his intent in having Garcia testify was for the members to know "the whole thing, the good, the bad, the worst, the ugly and the uglier all together" in order to make an informed judgment.  The adversarial nature of our system of justice depends on partisan

advocacy by both parties: the right to effective assistance of counsel includes the right of the accused to a counsel who is acting as an advocate for the accused, as opposed to a friend of the court. United States v. Cronic, 466 U.S. 648, 656-57 (1984). By eliciting from Garcia the details of his criminal activity and by conceding the "ugly" character of Garcia's actions, much of what defense counsel accomplished merely assisted the Government and bolstered the case against Garcia.

During his lengthy and detailed examination of Garcia's criminal activity, defense counsel's actions exhibited a clear lack of a sound trial strategy that would have served the best interests of his client. He did not attempt to elicit from Garcia any expressions of remorse or contrition; this judicial confession had no mitigating impact. In fact, defense counsel's direct examination opened the door for the prosecution in its cross-examination to elicit aggravating and damaging details not previously established, such as the fact that the escape route of a planned armored-vehicle robbery went by a child day-care center. Moreover, while the defense counsel argued during his sentencing argument that Garcia was remorseful, he also made arguments that served only to highlight Garcia's culpability. For example, defense counsel argued:

> Was he three-and-a-half-pounds of trigger pull away from [killing or injuring someone]? Yes. He's admitted to you that he has put people's lives in danger, and he has

13

> told you how he feels about that, but the
> bottom line is that we are not here to
> punish him for that possibility.

It is difficult to discern a sound trial strategy in reminding the members that Garcia was only "three-and-a-half-pounds of trigger pull away from" homicide. Although we are not prepared to say that the strategy chosen by defense counsel was per se ineffective, under the circumstances before us, and given that Garcia was not informed of other possible options, defense counsel's performance fell measurably below the performance ordinarily expected of fallible lawyers.

The extreme harshness of the sentence returned by the members is strong evidence that Garcia was prejudiced by the aggravating testimony elicited from him as he followed defense counsel's advised course of action. The Government asked for a $23,000 fine and confinement for 86 years, and the members returned a sentence which included a fine of $60,000 and a sentence of 125 years - $37,000 and 39 years more than even what the Government thought was appropriate. Such an exceptionally harsh sentence leads us to believe that there is a reasonable probability of a different outcome to the court-martial had defense counsel explored the range of available options with his client. See Grigoruk, 56 M.J. at 307.

In conclusion, we find that the "strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance" has been overcome.  Strickland, 466

U.S. at 689.  There was no reasonable explanation for the

defense team's actions with regards to the Article 32 waiver.

That action, coupled with counsel's advice to confess and his

subsequent lack of a coherent trial strategy, falls measurably

below the performance ordinarily expected of fallible lawyers.

There is a reasonable probability that, absent these errors,

there would have been a different result.

DECISION

We therefore set aside findings and sentence and the

decision of the Navy-Marine Corps Court of Criminal Appeals.

This case is returned to the Judge Advocate General.  A

rehearing may be ordered upon completion of an Article 32

investigation and pretrial advice.

United States v. Garcia, No. 03-0151

CRAWFORD, Chief Judge (dissenting):

I respectfully dissent from the majority's unprecedented treatment of (1) the waiver of the investigation pursuant to Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832 (2000), and (2) the accused's right to a mid-trial continuance, as well as from the majority's (3) hasty and fundamentally unfair resolution of the ineffectiveness of counsel issue without first ordering a hearing pursuant to United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967). I fear the unintended consequence of these actions will place this Court's opinion outside the judicial mainstream and undermine public confidence in its decision-making.

The opinion fails to recognize that a majority of federal courts have indicated that counsel may waive a preliminary hearing and an indictment by a grand jury. See, e.g., New York v. Hill, 528 U.S. 110, 114 (2000). These proceedings are similar to the military's investigation under Article 32. Contrary to federal precedent, this is the first time in this Court's history that the majority holds that waiver of the Article 32 investigation is a personal right of the accused. Moreover, the Court's holding implies that Appellant has a right to a mid-trial continuance to negotiate a pretrial agreement after a three-day presentation of Government testimony.

United States v. Garcia, No. 03-0151

The majority also resolves the allegation of ineffectiveness based on an unchallenged affidavit from Appellant, who over a number of months admittedly lied to both his civilian and military defense counsel about his involvement in the offenses, and only changed his mind mid-trial after the Government's three-day presentation of evidence to the court members.  The majority's action is not only premature, but also fundamentally unfair to defense counsel.  To resolve the ineffectiveness issue as to advice of counsel concerning a guilty plea and a pretrial agreement, I would order a DuBay hearing, rather than reverse at this level.

In United States v. Lewis, 42 M.J. 1 (C.A.A.F. 1995), military and civilian defense counsel resisted the request for an affidavit.  This Court in Lewis chose to treat the pleadings as a motion for intervention, and rejected defense counsel's assertion that the defense did not have to cooperate.  In the instant case, civilian defense counsel, a member of our bar, did not furnish an affidavit as to the facts surrounding Appellant's plea.  As in Lewis, this Court may legitimately request that both counsels participate in a DuBay hearing to resolve the facts surrounding their advice on the guilty plea, testimony at trial, and a cap on any sentence.  I feel it is inappropriate to hold that counsel is ineffective without giving them a chance to respond at a court-ordered DuBay hearing.

2