*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GASTON, STEWART, and HOUTZ
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Frantz BEAUGE**
Chief Petty Officer (E-7), U.S. Navy
Appellant

**No. 201900197**

Decided: 11 January 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Hayes Larsen (arraignment)
Michael Luken (trial)

Sentence adjudged 1 March 2019 by a general court-martial convened at Naval Station Norfolk, Virginia, consisting of officer and enlisted members. Sentence approved by the convening authority: reduction to E-1 and confinement for one year.

For Appellant:
*Lieutenant Commander Christopher Riedel, JAGC, USN*

For Appellee:
*Major Clayton L. Wiggins, USMC*
*Lieutenant Joshua C. Fiveson, JAGC, USN*

Judge STEWART delivered the opinion of the Court, in which Senior Judge GASTON and Judge HOUTZ joined.

———————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

———————————————

STEWART, Judge:

Appellant was convicted, contrary to his pleas of two specifications of sexual abuse of a child, in violation of Article 120b, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 920b, for committing lewd acts upon his twelve-year-old niece by intentionally rubbing her genitalia with his finger and by kissing her and putting his tongue in her mouth, with an intent to gratify his sexual desire.

Appellant asserts two assignments of error [AOEs]: (1) the military judge abused his discretion in denying Appellant's motion for discovery of the victim's mental health records under Military Rule of Evidence [Mil. R. Evid.] 513(d)(3) when the victim's psychotherapist had reported information from the victim's confidential communications to her under a duty imposed by Florida state law; and (2) Appellant's trial defense counsel were ineffective by failing to pursue access to the victim's mental health records under either the child abuse exception to the psychotherapist-patient privilege, Mil. R. Evid. 513(d)(2), or as constitutionally required. We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

### A. The Summer of 2014

Appellant's convictions stem from conduct during the summer of 2014. In June of that year, Ms. "Golf,"[1] Appellant's twelve-year-old niece, moved into Appellant's home because Ms. Golf's parent's home entered foreclosure. Facing eviction and potential homelessness, Appellant and his wife offered to take in Ms. Golf and her brother. Ms. Golf's parents were initially reluctant but ultimately assented to the offer. Ms. Golf and her brother spent several weeks of the summer at Appellant's home where twelve people resided,

---

[1] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

including Appellant and his three children, Ms. Golf's cousins. Sometime prior to the beginning of the school year, Ms. Golf returned to her own home.

Early in Ms. Golf's stay with Appellant, Appellant requested that she meet him in his garage. Initially thinking that she was in trouble, she met Appellant in the garage where he explained to her how he had put a roof over Ms. Golf's and her brother's heads, watched over other children, and that it "wasn't fair that he wasn't getting anything back."[2] Ms. Golf felt scared and guilty as a result of this comment. She assumed Appellant wanted money in exchange for staying at his home, but after Appellant's comment, he leaned in and kissed her on the lips and put his tongue into her mouth. Ms. Golf left the garage and went to the bathroom where she began to cry.

That night, Appellant approached Ms. Golf again, this time while she was in bed in a room that she shared with her cousin. Appellant asked Ms. Golf to follow him into the master bedroom. Once in Appellant's bedroom, Appellant kissed Ms. Golf and placed his hands on her lower back and buttocks underneath her clothing. Appellant told Ms. Golf to "hump" him, meaning to rub herself against his pelvic area.[3] This went on for approximately ten to fifteen minutes and at the conclusion of the episode, Appellant thanked Ms. Golf. This same process occurred several times during Ms. Golf's stay with Appellant, and only whenever Appellant's spouse worked at night.

On another occasion, Appellant approached Ms. Golf while she showered. Ms. Golf noticed a figure standing in the bathroom as she concluded her shower. She could tell that the figure was that of Appellant, because she noticed the colors of his uniform and his general figure. Ms. Golf wrapped herself in a towel, and as she attempted to exit the shower, Appellant asked her if she "missed him."[4] In an effort not to anger Appellant and quickly leave the bathroom, Ms. Golf replied "yes."[5] At that point, Appellant placed his hand in between the edges of Ms. Golf's towel and rubbed Ms. Golf's clitoris.

Charges stemming from the above-described conduct were referred to a general court-martial after Ms. Golf reported Appellant's activity to a teacher and a school guidance counselor. The guidance counselor referred Ms. Golf to

---

[2] R. at 375.

[3] *Id.* at 387-88.

[4] *Id.* at 397.

[5] *Id.*

a local therapist,[6] Ms. Delta, who reported Appellant's conduct to local law enforcement authorities via the Florida Abuse Hotline Information System ["Hotline"], as she was required to do pursuant to Florida law.[7]

**B. Appellant Unsuccessfully Sought Production of Hotline Records**

At trial, Appellant submitted a discovery request asking for the production of records pertaining to Ms. Delta's Hotline report. The Government responded by providing a "Confidential Investigative Summary" ["summary"] of the Hotline report. The summary contains no information identifying the reporter of the information within the report, and contains a brief narrative apparently summarizing the information provided by the reporter to the Hotline.[8] The narrative portion of the summary describes an allegation that Ms. Golf's uncle fondled her, and "even attempted to penetrate her on some occasions; however, he was never successful with his attempts to penetrate her."[9] Later, Appellant's Defense team and representatives from the Child Protective Team of Brevard County, Florida, separately, interviewed Ms. Golf. It appears that Ms. Golf made no mention of "penetration" during those interviews.[10]

Later, Appellant moved to compel the discovery of "all records of communications between [Ms. Golf] and Ms. [Delta] on or about 15 December 2016 leading to a report of child sexual abuse allegedly committed against [Ms. Golf] being made to the [Florida] Department of Children and Families."[11] Appellant argued below—as he does on appeal—that while these records would normally constitute privileged communications between a psychotherapist and her patient, the privilege should have been pierced

---

[6] Appellant conceded below that Ms. Delta was a "psychotherapist / clinical counselor." R. at 29. There appears to be no dispute that as a threshold matter, the communications between Ms. Golf and Ms. Delta fall within the psychotherapist-patient privilege. *See* Mil. R. Evid. 513(b).

[7] Fla. Stat. § 39.201.

[8] App. Ex. X at 16.

[9] *Id.*

[10] *Id.* at 7.

[11] App. Ex. X. On appeal, Appellant suggests he was entitled to Ms. Delta's "clinical notes." Despite the difference in verbiage used, we assume that Appellant bases his alleged errors on failures to obtain the same "[e]vidence of a patient's records or communications" that the rule contemplates and were sought below. Mil. R. Evid. 513(b)(5).

because Florida law imposed a duty to report information contained in those communications. *See* Mil. R. Evid. 513(d)(3). Appellant argued that Mil. R. Evid. 513(d)(3) should be read such that if state law imposes a duty to report, then all communications from patient to psychotherapist made during the meeting in which the psychotherapist learns of reportable abuse are not privileged. The Government argued that the exception should be read more narrowly, such that the rule excepts from privilege only the specific information that state law requires to be disclosed. The military judge heard argument at a pretrial Article 39a, UCMJ, session, and ordered Appellant and the Government to submit bench memoranda dealing with how the exception to the privilege came to be, and what the drafters intended with its issuance.

After reviewing the additional briefs, the military judge ruled that the communications between Ms. Golf and Ms. Delta were privileged, and that only the information reported to authorities was exempt from that privilege.[12] On the first day of trial, the Government additionally provided the Defense with the audio recording of Ms. Delta's report to the Hotline.

## C. The Military Judge's Analysis

The military judge relied heavily on the purposes underpinning Florida's mandatory reporting requirement and Florida's establishment of the reporting Hotline. His ruling discusses how Florida's Section 39.201, which makes disclosure of child abuse a mandatory reporting requirement for psychotherapists, exists to ensure both that investigations are initiated after reports of abuse, and that therapists do not violate their professional responsibilities to patients in cases of child abuse. The military judge noted that the rule does not detail precisely what psychotherapists must report to authorities, as the statute only requires that reporters of the information provide their name. The military judge went on to analogize this reporting requirement with Florida's "dangerous patient exception," which also permits the disclosure of confidential communications between doctor and patient. The military judge explained that, like that exception, the Florida statutory scheme does not require the psychotherapist to disclose *all* communications with the patient, but only those necessary to communicate abuse to authorities. He also noted that the Florida statutes limit who may access reports of abuse made to the Hotline.

---

[12] App. Ex. XII at 6.

Next, the military judge analogized Mil. R. Evid. 513(d)(3) to Mil. R. Evid. 513(d)(2) (another exception to the psychotherapist-patient privilege dealing with allegations of child abuse). He cited *LK v. Acosta*,[13] an Army Court of Criminal Appeals case that analyzed the drafters' intent behind the child-abuse exception. He noted that the purpose behind Mil. R. Evid. 513(d)(2) was not to mandate the disclosure of every alleged victim's mental health records to their alleged abuser, but rather to ensure that military commanders were appropriately informed of allegations of abuse within their commands. In concluding that the exception is limited in scope, he reasoned that reading Mil. R. Evid. 513(d)(3) to require disclosure of all communications between psychotherapist and patient any time a state had a mandatory reporting scheme in place would "obliterate" the privilege in its entirety and chill communications between psychotherapists and their patients.[14] In other words, "Florida's mandatory reporting laws were placed to protect alleged child abuse victims, not to thwart a child-victim's access to 'advice, diagnosis, or treatment of a mental or emotional condition.'"[15]

The military judge ultimately concluded that Ms. Golf's communications with Ms. Delta on 15 December 2016 (the date Ms. Golf initially disclosed the alleged abuse to Ms. Delta) were privileged under Mil. R. Evid. 513. Only the information reported out by Ms. Delta was excepted from the privilege. Appellant appeals this ruling, and asserts that his trial defense counsel were ineffective for not pursuing the aforementioned communications through other evidentiary rules.

## II. DISCUSSION

### A. The Military Judge's Ruling Under Mil. R. Evid. 513(d)(3)

Appellant asserts that the military judge's ruling under Mil. R. Evid. 513(d)(3) was erroneous. We review a military judge's ruling on a motion to produce a psychotherapist's records for an abuse of discretion.[16] "To find an abuse of discretion requires more than a mere difference of opinion—the challenged ruling must be arbitrary, fanciful, clearly unreasonable, or clearly

---

[13] 76 M.J. 611 (A. Ct. Crim. App. 2017).

[14] App. Ex. XII at 5.

[15] *Id.* (quoting Mil. R. Evid. 513(b)(1)).

[16] *United States v. Chisum*, 77 M.J. 176, 179 (C.A.A.F. 2018).

erroneous."[17] A military judge abuses his discretion when he (1) predicates his ruling on findings of fact that are not supported by the evidence of record; (2) uses incorrect legal principles; (3) applies correct legal principles to the facts in a way that is clearly unreasonable, or (4) fails to consider important facts.[18] We review conclusions of law de novo.[19]

We find no error in the military judge's conclusions that Ms. Golf's communications with Ms. Delta are privileged under Mil. R. Evid. 513, and that the Mil. R. Evid. 513(d)(3) exception applies to only the information Ms. Delta reported to Florida's Child Abuse Hotline. As the military judge recognized in his thorough, detailed ruling, Mil. R. Evid. 513 is a rule of privilege, not discovery.[20] Originating with the Supreme Court's decision in *Jaffee v. Redmond*,[21] the purpose of the rule is to protect the societal benefit of confidential mental health counseling, similar to the clergy-penitent privilege.[22] Thus, Mil. R. Evid. 513 establishes a privilege against disclosure of confidential communications made by a person who "consults with or is examined or interviewed by a psychotherapist for purposes of advice, diagnosis, or treatment of a mental or emotional condition."[23]

We agree with the military judge that Ms. Golf's communications with Ms. Delta fall within the protections of the Rule.[24] We also agree with his interpretation of Mil. R. Evid. 513(d)(3), which creates an exception from the privilege "when federal law, state law, or service regulation imposes a duty to report information contained in a communication."[25] In interpreting statutory or other provisions of the *Manual for Courts-Martial*, "[t]he plain language

---

[17] *United States v. Jasper*, 72 M.J. 276 279-80 (C.A.A.F. 2013).

[18] *United States v. Commisso*, 76 M.F. 315, 321 (C.A.A.F. 2017) (citations omitted).

[19] *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004).

[20] *LK v. Acosta*, 76 M.J. 611, 613 (ACCA 2017).

[21] 518 U.S. 1 (1996).

[22] *Acosta*, 76 M.J. at 614 (quoting Mil. R. Evid. 513 analysis at A22-45).

[23] Mil. R. Evid. 513 (b)(1).

[24] *See* Mil. R. Evid. 513(b)(2) (defining psychotherapist as a "psychiatrist, clinical psychologist, clinical social worker, or other mental health professional").

[25] Mil. R. Evid. 513(d)(3).

will control, unless use of the plain language would lead to an absurd result."[26]

Here, the plain language of Mil. R. Evid. 513(d)(3) states there is no privilege when "information contained in a[n otherwise confidential] communication" is required to be disclosed by a state statute. Like the military judge, we conclude the plain meaning of this phrase is that the privilege is lost with respect to the "information" that is mandatorily reported (and therefore no longer confidential), not the entirety of the confidential communications leading to the report. After all, "the essential function of the privilege is to protect a confidence that, once revealed by any means, leaves the privilege with no legitimate function to perform."[27] Reading the exception in this manner also comports with the rule's requirement that

> Any production or disclosure permitted by the military judge under this rule must be *narrowly tailored* to only the specific records or communications, or *portions of such records or communications*, that meet the requirements for one of the enumerated exceptions to the privilege . . . and are included in the stated purpose for which the records or communications are sought . . . .[28]

Other privileges have been construed in precisely this manner—i.e., that the privilege over certain confidential information can be lost while the underlying privilege is preserved. For instance, in *United States v. Mays*, the Court of Military Appeals held that an attorney could reveal confidential communications to defend against an allegation of ineffective assistance of counsel, but that the attorney-client privilege was lost only with respect to communications relevant to defend against the allegation, not all communications between the client and the attorney.[29] In *United States v. Marrelli*, an attorney was compelled to turn over certain fraudulent checks his client had given him, as they fell outside the scope of the attorney-client privilege, but the privilege still existed regarding communications properly falling under the attorney-client privilege regarding legal services that were not in fur-

---

[26] *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007) (citing *United States v. Martinelli*, 62 M.J. 52, 82 n.24 (C.A.A.F. 2005) (Crawford, J. dissenting)).

[27] Charles T. McCormick, *McCormick on Evidence*, § 93 (7th ed. 2013), *quoted in Jasper*, 72 M.J. at 281.

[28] Mil. R. Evid. 513(e)(4) (emphasis added).

[29] 33 M.J. 455 (C.M.A. 1991).

therance of a crime.[30] Similarly, in *United States v. Rhea*, the court held an attorney could disclose a calendar his client had given him (which was evidence of a crime), but not how the calendar came into his possession, which narrowly tailored the disclosure to only meet the law's requirements while still maintaining the privilege with respect with respect to the rest of the communications concerning the calendar.[31]

To read the rule otherwise would produce absurd results. There would be no way under the language of the rule to determine the parameters of the "communication" at issue: would it mean the privilege would be lost over the patient's entire privileged conversation; every privileged conversation with the same psychotherapist; only those conversations in which the abuse was discussed; any part of any conversation discussing the abuse; the statements and diagnoses the psychotherapist made in response, something in between? Thus, to interpret the rule more broadly would mean the privilege was lost over some (potentially large) amount of unrelated confidential information solely because it was conveyed during the same treatment session or to the same psychotherapist. This would result in child victims in most states essentially having no psychotherapist-patient privilege when seeking initial or even follow-up treatment, which would defeat the public policy purpose for which this privilege was created by *Jaffee*—encouraging mental health treatment through open, honest communications (secured by confidentiality) with mental health providers.[32]

Finally, as the military judge noted, this interpretation comports with the framework of the state statute at issue. Florida's Section 39.201 makes disclosure of child abuse a mandatory reporting requirement for psychiatrists so as to initiate a safety assessment for alleged victims and start an investigative process. The purpose of the statute is not to mandate that psychiatrists disclose protected communications beyond what is necessary to report alleged child abuse. Thus, we share the military judge's view that "Florida's mandatory reporting laws were placed to protect alleged child abuse victims, not to thwart a child-victim's access to advice, diagnosis or treatment of a mental or emotional condition."[33] Similarly, as our sister court discussed in

---

[30] 15 C.M.R. 276, 281 (C.M.A. 1954).

[31] 33 M.J. 413, 415-19 (C.M.A. 1991).

[32] App. Ex. XVI.

[33] App. Ex. XII at 5; *see also Jaffee v. Redmond*, 518 U.S. 1 (1996) ("if the purpose of the privilege is to be served the participants in the confidential conversation must

*Acosta*, dealing with the Mil. R. Evid. 513(d)(2) exception, the drafter's intent for the Mil. R. Evid. 513 exceptions was to ensure military psychotherapists could properly report child abuse, "not to turn over every alleged child victim's mental health records to the alleged abuser."[34]

## B. Ineffective Assistance of Counsel Claim

Appellant asserts that his trial defense counsel were ineffective for failing to pursue the aforementioned communications through either Mil. R. Evid. 513(d)(2) [the "child abuse exception"] or by virtue of a constitutional right to pierce the psychotherapist-patient privilege. We review claims of ineffective assistance de novo.[35]

To determine whether counsel's representation was ineffective, we apply the two-prong test established by *Strickland v. Washington*.[36] That test places the burden on Appellant to demonstrate (1) that counsel's performance was in fact deficient, and (2) that any deficiency was prejudicial.[37] Our analysis of the first prong is guided by the maxim that the Sixth Amendment entitles an accused to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms."[38] We afford deference to counsel's performance and decision-making by presuming that counsel provided the representation envisioned by the Sixth Amendment.[39] Because Appellant's argument stems from counsel's failure to make a motion to compel records, he must also show that a reasonable probability exists that any such motion would have been meritorious, meaning *successful*.[40] "Failure to raise a meritless argument does not constitute ineffective

---

be able to predict with some degree of certainty whether particular discussions will be protected") (quoting *Upjohn Co. v. United States*, 449 U.S. 393, 393 (1981)).

[34] 76 M.J. at 619.

[35] *United States v. Gutierrez*, 66 M.J. 329, 330-31 (C.A.A.F. 2008).

[36] 466 U.S. 668, 687 (1984).

[37] *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010); *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005).

[38] *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *United States v. Terlep*, 57 M.J. 344, 349 (C.A.A.F. 2002).

[39] *United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004).

[40] *See United States v. Jameson*, 65 M.J. 160, 163-64 (C.A.A.F. 2007).

assistance."[41] As for the second prong, prejudice means that counsel's deficient performance resulted in the denial of "a fair trial, [that is] a trial whose result is unreliable."[42] In other words, we test whether there is a reasonable probability that, but for counsel's deficiencies, the result of the trial would have been different.[43]

Appellant has not carried these burdens here.

*1. A reasonable probability does not exist that a motion to compel Ms. Golf's privileged communications under Mil. R. Evid. 513(d)(2) would have been successful*

The child abuse exception provides that there is no privilege under Mil. R. Evid. 513 "when the communication [between psychotherapist and patient] is evidence of child abuse or neglect, or in a proceeding in which one spouse is charged with a crime against a child of either spouse."[44] Appellant argues that Ms. Delta's notes "were evidence of child abuse" and thus fall within this exception to the psychotherapist-patient privilege. He distinguishes the instant case from *Acosta*,[45] dealing with the same rule, where our sister court found that evidence establishing the *absence* of abuse was not subject to the child abuse exception. For the following reasons, Appellant's argument fails.

Appellant's threshold point that the communication or notes sought were in fact evidence of child abuse and thus subject to the exception, while reasonable, is no silver bullet for his claim. Clearly, Ms. Delta had reason to report an allegation of child abuse to authorities following her initial meeting with Ms. Golf. It thus stands to reason that they discussed *some* allegation of child abuse in that meeting.

Thus, contrary to the Government's argument, Appellant's request differs in a crucial way from the issue in *Acosta*. There, the accused sought generalized mental health records without the sort of information that Appellant had here, namely, that Ms. Golf had *some* communication with her psychotherapist discussing child abuse. The Government also suggests that when Appel-

---

[41] *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997) (quoting *Boag v. Raines*, 769 F.2d. 1341, 1344 (9th Cir. 1985)).

[42] *United States v. Dewrell*, 55 M.J. 131, 133 (C.A.A.F. 2001) (citation and internal quotation marks omitted).

[43] *United States v. Quick*, 59 M.J. 383, 387 (C.A.A.F. 2004).

[44] Mil. R. Evid. 513(d)(2).

[45] 76 M.J. at 611.

lant argues that trial defense counsel should have pursued potentially *exculpatory* evidence through a rule geared toward disclosing evidence of *child abuse*, Appellant's argument is "internally inconsistent."[46] However, this overlooks the fact that the evidence sought could plausibly be evidence both of child abuse *and* exculpatory to the extent it offered inconsistencies, or failures in memory by Ms. Golf.

But the question at issue is not whether Appellant's argument is reasonable; rather, it is whether his counsel had a reasonable *probability of success* had he brought a motion on the basis of Mil. R. Evid. 513(d)(2). We conclude the answer to this latter question is no. The exceptions to the psychotherapist-patient privilege were created to "address the specialized society of the military and separate concerns that must be met to ensure military readiness and national security."[47] "These exceptions are intended to emphasize that commanders are to have access to all information necessary for the safety and security of military personnel, operations, installations, and equipment. Therefore, psychotherapists are to provide such information despite a claim of privilege."[48] As noted above, the privilege itself is based on the societal benefit of confidential counseling recognized by *Jaffee*.[49]

Similar to his argument under Mil. R. Evid. 513(d)(3), Appellant argues that by making any mention of child abuse during communications with a psychotherapist, a patient loses all privilege over the entirety of those communications. His reading of the rule would grant broad access to any manner of privileged communications between psychotherapists and minor patients whenever a patient makes any mention of child abuse. Given the drafter's intent behind the privilege and its exceptions, we find that this interpretation of the rule's plain language would lead to a similar absurdity as that which we identify above in discussing Mil. R. Evid. 513(d)(3).[50] We will not endorse such an interpretation for a rule whose purpose is to ensure that commanders are able to be privy to allegations of child abuse to ensure the safety of personnel, and to investigate allegations, "not to turn over every alleged child victim's mental health records to the alleged abuser."[51]

---

[46] Gov. Br. at 30.

[47] *Manual for Courts-Martial, United States* (2016 ed.), App. 22, at A22-51.

[48] *Id.*

[49] *Jaffee v. Redmond*, 518 U.S. 1 (1996).

[50] *United States v. Lewis*, 65 M.J. 85 (C.A.A.F. 2007).

[51] *Acosta*, 76 M.J. 611, 617-19 (ACCA 2017).

Accordingly, we do not find it reasonably probable that a motion to compel Ms. Golf's privileged communications through Mil. R. Evid. 513(d)(2) would have proven successful. Rather, we conclude the military judge would have interpreted this exception under these circumstances, as we do, to extend no farther than the Mil. R. Evid. 513(d)(2) exception—i.e., that it pierced the privilege only as to the abuse allegations reported by Ms. Delta to the Hotline, to which the Defense already had access. We conclude for any further information the military judge would have determined that the Defense was in fact pursuing evidence of an absence of abuse, which our sister court in *Acosta* found, and we agree, is beyond the purview of the exception.

*2. A reasonable probability does not exist that a motion to compel Ms. Golf's privileged communications under a constitutionally-based exception would have been successful*

While Mil. R. Evid. 513(d) no longer contains an enumerated constitutional exception, it is axiomatic that an evidentiary rule of privilege may not infringe on the "basic constitutional rights of due process and confrontation."[52] We stated in *J.M. v. Payton-O'Brien* that "when determining whether in camera review or disclosure of privileged materials is required under Mil. R. Evid. 513, the military judge should determine whether *infringement of the privilege* is required to guarantee a meaningful opportunity to present a complete defense."[53] Appellant argues that trial defense counsel's ability to meaningfully cross-examine the Government's key witness, Ms. Golf, was unconstitutionally hampered by lack of access to her privileged communications with her psychotherapist. He suggests that those communications would have contained inconsistent statements by Ms. Golf, and thus afforded Appellant a more complete cross-examination.[54] However, Appellant was not deprived of his right to cross-examine Ms. Golf; rather, what is at issue here is his ability to *discover* information that may or may not have proven useful in that cross-examination. The Sixth Amendment's guarantees do not transform the desire to discover information into a constitutional right.[55]

---

[52] *J.M. v. Payton-O'Brien*, 76 M.J. 782, 788 (N-M. Ct. Crim. App. 2017).

[53] *Id.* (emphasis in original).

[54] App. Br. at 27-28.

[55] *Ritchie v. Pennsylvania*, 480 U.S. 39, 52 (1987) (plurality op.) (Justices Stevens and Scalia refused to consider the merits of the case, leaving seven justices to review. Four of those seven Justices joined in Part III-A of the opinion holding that the Confrontation Clause is not a rule of pretrial discovery.).

In *Ritchie v. Pennsylvania*, the Supreme Court addressed whether disclosure of privileged records from Pennsylvania's Children and Youth Services—a protective service agency "charged with investigating cases of suspected mistreatment and neglect"—was required where a defendant asserted a need for the records to impeach a witness.[56] The Pennsylvania Supreme Court, interpreting *Davis v. Alaska*[57]—a case relied upon by Appellant here—answered this question in the affirmative. The United States Supreme Court disagreed, finding that "if we were to accept this broad interpretation of *Davis*, the effect would be to transform the Confrontation Clause into a constitutionally compelled rule of pretrial discovery. Nothing in the case law supports such a view."[58] The Supreme Court added that the right to question adverse witnesses "does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony."[59] Contrasting *Davis*, the Supreme Court provided that the constitutional error was not that the defendant was deprived of potentially favorable discovery, but rather that the he was "denied the right to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness."[60]

While this Court has contemplated a constitutional right can nevertheless be at play with respect to the pretrial discovery of privileged mental health records,[61] we cannot find that Appellant's trial defense counsel would have been successful had he taken the constitutional approach Appellant now

---

[56] *Id.* at 43, 52.

[57] 415 U.S. 308 (1974) (finding that preventing cross-examination of a state witness with evidence of juvenile convictions violated the Confrontation Clause).

[58] *Ritchie*, 480 U.S. at 52.

[59] *Id.*

[60] *Id.* at 54 (citing *Davis*, 415 U.S. at 318). The *Ritchie* Court ultimately remanded the case for an in camera review of the records in dispute to determine whether they contained information that "probably would have changed the outcome of the trial." We need not take similar action here, as Appellant has failed to meet the requirements of Mil. R. Evid. 513(e)(3), discussed *infra*.

[61] *Payton-O'Brien*, 76 M.J. at 788 (relying on *Holmes v. South Carolina*, 547 U.S. 319 (2006) for the notion that a constitutional right is implicated by a refusal to compel discovery of privileged mental health records). Of course, were the Government in possession of the privileged communications, and they contained favorable or exculpatory evidence for the Defense, certain constitutional rights would come into play. *See, e.g., Brady v. Maryland*, 373 U.S. 83 (1963).

suggests to disclosure of Ms. Golf's privileged communications. Appellant asserts that had his counsel pursued such an approach, the military judge would have at least ordered production of those communications for in camera review.[62] However, Mil. R. Evid. 513(e)(3) makes in camera review a matter of discretion for the military judge.[63] The Rule also provides a four-pronged test that the party moving for disclosure of the privileged communications must satisfy before in camera review is justified:

> (A) a specific factual basis demonstrating a reasonable likelihood that the records or communications would yield evidence admissible under an exception to the privilege;

> (B) that the requested information meets one of the enumerated exceptions under [Mil. R. Evid. 513(d)];

> (C) that the information sought is not merely cumulative of other information available; and

> (D) that the [moving] party made reasonable efforts to obtain the same or substantially similar information through non-privileged sources.[64]

Even setting aside (B), Appellant fails to carry his burden to satisfy all of these elements. With regard to (A), as discussed above, Appellant has not articulated a reasonable likelihood that the records of which he was deprived would yield any additional evidence, much less admissible evidence.[65] The perceived inconsistency regarding "attempted penetration" is not enough to demonstrate a reasonable likelihood that the communications sought would yield additional admissible evidence. Without more, a preponderance of the evidence does not support that trial defense counsel could have provided the type of specific factual basis necessary to justify in camera review.

---

[62] App. Br. at 25.

[63] The Rule states that the military judge *may* order in camera review of disputed privileged records, assuming the requisite elements of Mil. R. Evid. 513(e)(3) are met.

[64] Mil. R. Evid. 513(e)(3).

[65] We recognize the inherent difficulty faced by defense counsel to articulate a specific factual basis requiring disclosure of information that counsel has no access to, but in this case, counsel had access to the Hotline summary and the Hotline report audio, from which he could have articulated a specific factual basis for additional disclosures. The failure to do so suggests there would have been little merit in pursuing additional disclosures.

As for (C), Appellant has not carried his burden to demonstrate that the information sought would not have been merely cumulative of other information available. Based on the information in the record, we cannot conclude that access to Ms. Golf's privilege communications was likely to reveal any additional, substantive evidence beyond that to which Appellant already had access. Thus, we find it unlikely that Appellant would have convinced the military judge that even in camera review was required under Mil. R. Evid. 513(e)(3).

*3. Assuming Appellant had established ineffective assistance, he suffered no prejudice*

Even assuming that his trial defense counsel's performance was deficient, the evidence before us does not support that but for counsel's deficiency, the result of the trial would have been different. Based on information turned over by the Government, the defense counsel were able to identify a possible inconsistency in Ms. Golf's recollection of events. They diligently worked to pursue further records through the most reasonable avenue, and their efforts were partially successful in that they resulted in Appellant's receipt of the audio recording of the psychotherapist's telephonic disclosure to authorities. Armed with this information, the trial defense counsel chose not to use it in the cross-examination of Ms. Golf.[66] This suggests that the audio recording did not reveal any additional inconsistencies with which to question Ms. Golf, or to pursue additional communications between her and her psychotherapist. We find it entirely reasonable for the trial defense counsel, in possession of a statement by Ms. Golf regarding "attempted penetration," to make the strategic decision not to introduce such evidence notwithstanding its potential impeachment value. Given that the evidence sought by Appellant was speculative in nature and that in camera review (let alone disclosure) was unlikely even if they chose to pursue it as constitutionally required, we find no reasonable probability that a Defense motion in this regard would have changed the outcome at trial. Thus, we cannot find Appellant suffered prejudice as a result of any deficiency on the part of his counsel.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and

---

[66] R. at 406-53.

fact and that no error materially prejudicial to Appellant's substantial rights occurred.[67] The findings and sentence are **AFFIRMED**.

Senior Judge GASTON and Judge HOUTZ concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[67] UCMJ arts. 59, 66.