UNITED STATES, Appellee, .

v.

Morzean WEATHERSPOON, Jr.,
Airman First Class, U.S. Air
Force, Appellant.

No. 96–1046.
Crim.App. No. 31395.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 8, 1997.

Decided Sept. 29, 1998.

For Appellant: *Captain Thomas R. Uiselt* (argued); *Lynmarie Cusack, Gary M. Myers,* and *Major Ormond R. Fodrea* (on brief); *Colonel Jay L. Cohen* and *Lieutenant Colonel Kim L. Sheffield.*

For Appellee: *Major Allen G. Erickson* (argued); *Colonel Theodore J. Fink* and *Major LeEllen Coacher* (on brief); *Lieutenant Colonel Michael J. Breslin.*

## Opinion of the Court

GIERKE, Judge:

A general court-martial composed of officers convicted appellant, contrary to his pleas, of assault with a means likely to inflict grievous bodily harm (2 specifications), communicating a threat (4 specifications), assault consummated by a battery, adultery, and obstructing justice, in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 USC §§ 928 and 934, respectively. The approved sentence provides for a dishonorable discharge, confinement and partial forfeiture of pay for 4 years, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed in an unpublished opinion.

This Court specified the following issue: *

WHETHER THE COURT OF CRIMINAL APPEALS ERRED BY APPLYING AN INCORRECT STANDARD REGARDING THE LIKELIHOOD OF GRIEVOUS BODILY HARM RESULTING FROM APPELLANT'S ASSAULT ON HIS WIFE: POSSIBILITY VERSUS PROBABILITY.

The two specifications of aggravated assault at issue in this case alleged that appellant choked his wife, AMW (**specification 1** of Charge I), and kicked her in the face (specification 3 of Charge I). Before the court below, appellant contended that the evidence was insufficient to prove that his acts were "likely to produce death or grievous bodily harm." The court below, 1996 WL 283232 rejected appellant's contention, summarizing the evidence as follows:

Here, appellant was the aggressor in a violent physical argument and AMW's only response was to try and avoid the blows. The assault took place in a confined area and AMW was unable to escape. Appellant grabbed AMW by the neck, dragged her across the room, bent her over backwards, all with increasing pressure. A short time later while AMW was sinking to the floor to get away from the blows, she received a kick to the face which landed on or near her eye. The choking and the kick were not isolated incidents but occurred in the midst of repeated blows. These assaults were not delivered to the victim's torso or legs but rather to her neck and head. Moreover, the choking was with increasing pressure and the kick was directed towards the vulnerable facial region. The nature of the fight, the potential for serious injury to the head and neck, the victim's lack of resistance and inability to escape, and appellant's highly emotional state and resultant lack of control convince us these incidents were accomplished with a means or force likely to produce grievous bodily harm.

Unpub op. at 4.

The court below cited our decision in *United States v. Johnson,* 30 MJ 53, 57 (CMA 1990), for the proposition that the term "likely to produce death or grievous bodily harm" requires only that death or grievous bodily harm "be more than merely a fanciful, speculative, or remote possibility." Chief Judge Dixon dissented, stating that the majority's definition "badly skews the distinction between a battery and an aggravated assault by suggesting that the mere potential for

---

* We also granted review of the following issue: WHETHER APPELLANT WAS DENIED HIS FIFTH AMENDMENT RIGHT TO BE FREE FROM DOUBLE JEOPARDY BECAUSE OF AN UNREASONABLE PILING ON OF CHARGES.

For the reasons stated in *United States v. Britton,* 47 MJ 195 (1997), and *United States v. Lloyd,* 46 MJ 19 (1997), we resolve this issue against appellant.

serious bodily harm would suffice." Unpub. op. at 6–7. Appellant now argues that Chief Judge Dixon's dissent is correct and that the court below evaluated the evidence under an incorrect legal standard. The Government disagrees, citing *United States v. Joseph*, 37 MJ 392 (CMA 1993).

An element of aggravated assault is that "the weapon, means, or force was used in a manner likely to produce death or grievous bodily harm." Art. 128(b)(1); para. 54b(4)(a)(iv), Part IV, Manual for Courts–Martial, United States (1995 ed.). The statutory phrase "likely to produce death or grievous bodily harm" is defined in paragraph 54c(4)(a)(ii), as follows: "When the natural and probable consequence of a particular use of any means or force would be death or grievous bodily harm, it may be inferred that the means or force is 'likely' to produce that result." This definition of "likely" in terms of "the natural and probable consequence" has remained unchanged since the enactment of the UCMJ. *See* para. 207b(1), Manual, *supra* (1951); para. 207c(1), Manual, *supra*, 1969 (Revised edition).

■ In one respect, Article 128(b)(1) is broader than some civilian statutes because it covers more than "dangerous weapons." *See United States v. Vigil*, 3 USCMA 474, 477, 13 CMR 30, 33 (1953). In another respect, it is narrower than some civilian statutes because it requires that any dangerous weapon or other instrumentality be used in a manner "likely to produce death or grievous bodily harm." *Compare United States v. Sturgis*, 48 F.3d 784, 787 (4th Cir.1995) (defining "dangerous weapon" under 18 USC § 113(c) as "an instrument capable of inflicting death or serious bodily injury"), *with United States v. Davis*, 47 MJ 484 (1998) (dangerous weapon must be used in manner likely to inflict death or grievous bodily harm). Because under Article 128(b)(1) the likelihood of death or grievous bodily harm must be "probable," it follows that it is insufficient to prove merely that death or grievous bodily harm is "possible."

■ The standard for determining whether an instrumentality is a "means likely to produce death or grievous bodily harm" is

the same in all aggravated assault cases under Article 128(b)(1). *See United States v. Outhier*, 45 MJ 326, 328 (1996). The concept of likelihood, however, has two prongs: (1) the risk of harm and (2) the magnitude of the harm. *See Joseph*, 37 MJ at 396–97 (distinguishing between the risk of a rifle bullet striking a victim and the magnitude of harm caused *if* the bullet strikes the victim); *see also United States v. Fernandez*, 121 F.3d 777, 780 (1st Cir.1997) (considering both risk of harm and likelihood of serious injury to determine whether assault on police officer is "crime of violence" under Sentencing Guidelines). The likelihood of death or grievous bodily harm is determined by measuring both prongs, not just the statistical risk of harm. Where the magnitude of the harm is great, there may be an aggravated assault, even though the risk of harm is statistically low. *See* 1 W. LaFave & A. Scott, *Substantive Criminal Law*, § 3.7 at 328 (1986).

The language relating to "likelihood" in the human immunodeficiency virus (HIV) cases like *Joseph* can be misleading if taken out of context. Most aggravated assault cases focus on the second prong, the magnitude of harm. *See, e.g., Vigil* (holding that striking sleeping victim in the face with fists was likely to produce grievous bodily harm). The HIV cases focus on the first prong, the risk of harm, that is, likelihood that HIV will be transmitted and the victim will develop Acquired Immune Deficiency Syndrome (AIDS). Addressing only the first prong, this Court repeatedly has held that the risk of harm need only be "more than merely a fanciful, speculative, or remote possibility." *United States v. Klauck*, 47 MJ 24, 25 (1997); *Joseph*, 37 MJ at 396–97; *Johnson*, 30 MJ at 57. We do not deviate from that holding in this case.

The second prong of the likelihood analysis, consideration of the magnitude of the risk, was not at issue in the HIV cases. In those cases, it was uncontested that death was the natural and probable consequence if the virus was transmitted and the victim developed AIDS. *See United States v. Klauck, supra; Joseph, supra* at 396; *Johnson, supra* at 55, 56.

212

■ Unlike the HIV cases, the present case focuses on the second prong of the likelihood analysis. In the present case, the risk of harm was not at issue. Like the rifle bullet that has found its mark, there was intentional, unlawful, physical contact. The only factual issue was the magnitude of the harm: whether the natural and probable consequence of appellant's choking his wife and kicking her in the face was death or grievous bodily harm. Under Article 128(b)(1), that consequence must be "probable," not merely "possible." The test for this second prong is not whether death or grievous bodily harm is "more than merely a fanciful, speculative, or remote possibility"; that test applies only to the first prong, the risk of harm. The test for the second prong, set out in the Manual for Courts–Martial, is whether death or grievous bodily harm was a natural and probable consequence. The Government concedes that the correct test is whether death or grievous bodily harm was "a *probable* consequence" of the choking and kicking. Answer to Final Brief at 7 (emphasis in original).

■ In assessing whether the two assaults, by choking and by kicking, were committed with a means likely to produce grievous bodily harm, the court below observed that "common sense tells us that in a violent physical confrontation where one party is not resisting the assault, there is a greater possibility of grievous bodily harm. The question in this case is whether this *possibility* is more than fanciful, speculative, or remote." Unpub. op. at 3 (emphasis added). After reviewing the evidence, the court said, "Our focus should be on the likelihood that the choking or kicking *could have* produced grievous bodily harm." Unpub. op. at 4 (emphasis added). It was this language that caused the dissenting judge to conclude that "the majority decision badly skews the distinction between a battery and an aggravated assault by suggesting that the mere potential for serious bodily harm would suffice." Unpub. op. at 6–7. It is somewhat unclear what test the court below actually applied in this case. If the Court of Criminal Appeals applied the test for the first prong (risk of harm) to both prongs (risk of harm and

magnitude of harm), it may have applied an inaccurate standard.

■ The Court of Criminal Appeals is required by Article 66(c), UCMJ, 10 USC § 866(c) (1994) to determine both factual and legal sufficiency of the evidence. Although a Court of Criminal Appeals has broad fact-finding power, its application of the law to the facts must be based on a correct view of the law. *See United States v. Taylor*, 47 MJ 322, 325 (1997) (sentence reassessment must be based on correct legal standard). In this case, however, we need not decide whether the court below applied an inaccurate standard; nor need we remand the case for clarification, because we are satisfied that any misconception regarding the correct standard was harmless. Based on our review of the record, we are satisfied that the evidence is legally sufficient. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Based on the lower court's evaluation of the evidence set out above, 49 MJ at 210, we hold that there is no reasonable likelihood that the court below would have reached a different conclusion regarding the factual sufficiency of the evidence, under the legal standards set out in this opinion. Accordingly, we hold that any erroneous view of the law held by the court below was harmless under the particular facts of this case.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judge CRAWFORD concur.

EFFRON, Judge (concurring in part and dissenting in part):

I agree with the majority's observation that "[i]t is somewhat unclear what test the court below actually applied in this case" for determining whether the assaults were with a means or force likely to produce death or "grievous bodily harm." 49 MJ at 212. If the Court of Criminal Appeals failed to apply the correct test, we then must consider the consequences as to each of the two separate statutory functions that the court must ac-

complish under Article 66(c), Uniform Code of Military Justice, 10 USC § 866(c) (1994).

The first statutory function involves the traditional responsibility of an appellate court to determine whether the findings are correct as a matter of law. To accomplish this task, the Court of Criminal Appeals must decide whether the evidence is legally sufficient to support the findings. Under *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), evidence is legally sufficient if any rational trier of fact could find guilt beyond a reasonable doubt.

This Court similarly is empowered under Article 67(c), UCMJ, 10 USC § 867(c) (1994), to decide questions of law, and our review of such questions is *de novo.* Accordingly, if the issue before us simply involved the question of legal sufficiency, we would not need to remand the case for the Court of Criminal Appeals to apply the correct legal standard. Instead, we could review the evidence for legal sufficiency under the correct standard and either affirm or reverse.

The second function of the Court of Criminal Appeals, however, involves a responsibility that is unique to that court under the military justice system. Under Article 66(c), the Court of Criminal Appeals "may affirm only such findings of guilty ... as it finds correct in ... fact." The Court of Criminal Appeals, unlike this Court and most appellate courts, is empowered to "weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses." Art. 66(c).

In contrast to errors of law, where we can substitute our legal analysis for that of the Court of Criminal Appeals, Congress has not authorized our Court to engage in the type of factfinding assigned by statute to the Court of Criminal Appeals. We have no power, in this case, to determine whether appellant's conviction for assault with a "means or force likely to· produce death or grievous bodily harm" was "correct in ... fact." Under. our authority to act "only with respect to" matters of law, Art. 67(c), our sole function with regard to the factfinding by the Court of Criminal Appeals is to determine, as a matter of law, whether the court below has performed its statutory responsibility.

It is our responsibility, under Article 67(c), to determine as a matter of law whether the court below employed the correct legal test for aggravated assault in determining that the findings were "correct in ... fact" and, if not, what are the legal consequences. *See United States v. Taylor,* 47 MJ 322, 325 (1997) (Court of Criminal Appeals abused its discretion because it "based its sentence reassessment on an erroneous view of the law").

I agree with the majority's analysis of Article 128 and its conclusion that the correct standard in this case is whether death or grievous bodily harm was a probable consequence of appellant's acts. The majority recognizes that the wording of the opinion below leaves us unable to determine whether that court applied the correct legal standard. As noted in the dissenting opinion below, the opinion of the Court of Criminal Appeals "badly skews the distinction between a battery and an aggravated assault by suggesting that the mere potential for serious bodily harm would suffice." Unpub. op. at 6–7. Under these circumstances, there is a substantial risk that the court applied the wrong standard when it determined that the findings were "correct in ... fact."

Any conclusion as to what the Court of Criminal Appeals would have done if it had analyzed the evidence under the correct standard is speculative and constitutes an inappropriate shortcut through Articles 66 and 67. I would remand the case to the Court of Criminal Appeals for reconsideration of the factual sufficiency of the evidence, in light of the majority's analysis of aggravated assault under Article 128.

SULLIVAN, Judge (concurring in the result):

My careful reading of the majority's opinion shows a somewhat conflicted* wandering

---

* The majority's proposed two-pronged analysis seems to be a new concept and therefore conflicts with our prior case law, *e.g., United States v. Joseph,* 37 MJ 392 (CMA 1993).

through some of our case law involving Article 128, Uniform Code of Military Justice, 10 USC § 928. It seems to be for no clear-cut purpose, since the majority finally states at the end of its inconclusive review of the law:

> It is somewhat unclear what test the court below actually applied in this case.... In this case, however, we need not decide whether the court below applied an inaccurate standard; nor need we remand the case for clarification, because we are satisfied that any misconception regarding the correct standard was harmless.

49 MJ at 212.

Although I cannot sign up with the majority's *dicta*, I join it in affirming this case. The evidence at trial supports appellant's conviction. Appellant's vicious battering of his wife was clearly found by the Court of Criminal Appeals to be an aggravated assault within the meaning of Article 128(b)(1). It said:

> This incident was but a microcosm of appellant's intense verbal and physical reactions to his deteriorating marriage. Here, appellant was the aggressor in a violent physical argument and AMW's only response was to try and avoid the blows. The assault took place in a confined area and AMW was unable to escape. Appellant grabbed AMW by the neck, dragged her across the room, bent her over backwards, all with increasing pressure. A short time later while AMW was sinking to the floor to get away from the blows, she received a kick to the face which landed on or near her eye. The choking and the kick were not isolated incidents but occurred in the midst of repeated blows. These assaults were not delivered to the victim's torso or legs but rather to her neck and head. Moreover, the choking was with increasing pressure and the kick was directed towards the vulnerable facial region. The nature of the fight, the potential for serious injury to the head and neck, the victim's lack of resistance and inability to escape, and appellant's highly emotional state and resultant lack of control convince us these incidents were accomplished with a means or force likely to produce grievous bodily harm.

Unpub. op. at 4.

I agree!