# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Technical Sergeant DAVID J. A. GUTIERREZ
### United States Air Force

## ACM 37913 (rem)

## 25 February 2014

Sentence adjudged 19 January 2011 by GCM convened at McConnell Air Force Base, Kansas. Military Judge: William C. Muldoon (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 8 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Daniel E. Schoeni; Captain Luke D. Wilson; and Kevin Barry McDermott, Esquire.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel Linell A. Letendre; Major Brian C. Mason; and Gerald R. Bruce, Esquire.

Before

ORR, HARNEY, and MITCHELL
Appellate Military Judges

UPON REMAND

This opinion is subject to editorial correction before final release.

PER CURIAM:

A general court-martial composed of a military judge sitting alone convicted the appellant, contrary to his pleas, of failing to obey a lawful order; committing indecent acts; aggravated assault; and adultery, in violation of Articles 92, 120, 128, and 134, UCMJ, 10 U.S.C. §§ 892, 920, 928, 934. The court sentenced him to a dishonorable discharge, confinement for 8 years, total forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the adjudged sentence. The appellant assigns as error that he received ineffective assistance of counsel based on his

counsel's refusal of "free expert assistance that would have provided a valid defense" to the aggravated assault charge. He also argues the evidence is insufficient to support the findings of guilty of aggravated assault and adultery; the adultery specifications fail to state an offense by omitting the terminal element; and his conviction of indecent acts violates his constitutional rights.

On 21 March 2013, we affirmed the findings and sentence in this case. *United States v. Gutierrez*, ACM 37913 (A.F. Ct. Crim. App. 21 March 2013) (unpub. op.). The appellant filed a petition for review with the Court of Appeals for the Armed Forces. On 4 December 2013, that Court granted the appellant's petition for review on the issue of whether this Court's original panel was properly constituted. *United States v. Gutierrez*, No. 13-0522/AF (Daily Journal 4 December 2013). In the same order, our superior court set aside our decision and remanded the case to this Court for an additional review and consideration of the above issue. *Id.*

In light of *Ryder v. United States*, 515 U.S. 177 (1995), and *United States v. Carpenter*, 37 M.J. 291 (C.M.A. 1993), *vacated*, 515 U.S. 1138 (1995), we have reconsidered our earlier decision with a properly constituted panel. Consistent with our earlier decision, we affirm the findings and the sentence as approved.

*Background*

The appellant was diagnosed as testing positive for the Human Immunodeficiency Virus (HIV) in 2007. Upon reassignment to McConnell Air Force Base, Kansas, his commander gave him an order to follow the preventive medicine requirements outlined in Air Force Instruction 48-135, *Human Immunodeficiency Virus Program*, ¶ 3.5 (12 May 2004) (incorporating Change 1, 7 August 2006). The order required the appellant to inform his sexual partners of his HIV status and use proper methods to prevent transfer of body fluids during sexual contact. He and his spouse continued to engage in group sexual activities with other consenting adults. He did not inform these other sexual partners of his HIV-positive status and, on some occasions, did not use proper methods to prevent the transfer of body fluids during sexual contact. None of the appellant's sexual partners had tested positive for HIV at the time of trial.

*Ineffective Assistance of Counsel*

The appellant argues he was denied effective assistance of counsel by his trial defense counsel's refusal to accept an offer of free expert assistance from the Office of Medical and Scientific Justice, an organization described by the appellant as providing free assistance to defendants facing HIV-related charges. In support of his argument the appellant claims, "Without the benefit of an expert's review of the evidence, trial defense counsel were flying blind." The appellant argues his trial defense counsel failed to properly prepare to challenge the Government's case because "they did not consult an

HIV expert as they should have." Affidavits by both trial defense counsel, submitted in response to the ineffective assistance claim, state that the defense team did, in fact, consult with an HIV expert appointed and paid for by the convening authority.

We review claims of ineffective assistance of counsel de novo. *United States v. Sales*, 56 M.J. 255, 258 (C.A.A.F. 2002) (citing *United States v. Wiley*, 47 M.J. 158, 159 (C.A.A.F. 1997)). Service members have a fundamental right to the effective assistance of counsel at trial by courts-martial. *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005) (citing *United States v. Knight*, 53 M.J. 340, 342 (C.A.A.F. 2000)). Claims of ineffective assistance of counsel are reviewed by applying the two-prong test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, an appellant must demonstrate: (1) a deficiency in counsel's performance that is "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment,"[1] and (2) that the deficient performance prejudiced the defense through errors "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The appellant bears the heavy burden of establishing that his trial defense counsel was ineffective. *See United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004). The law presumes counsel to be competent, and we will not second-guess a trial defense counsel's strategic or tactical decisions. *Garcia*, 59 M.J. at 450.

The record clearly rebuts the appellant's claim that his trial attorneys proceeded without expert assistance. The convening authority appointed an HIV expert to assist the trial defense team, and the expert actively participated in pretrial interviews of the Government's expert who, as a result of challenges by the defense expert, modified her opinions concerning the likelihood of transmission during various forms of sexual activity in favor of the appellant. A voucher shows payment to the named defense consultant for over 16 hours of consultation and records review. The specific error claimed by the appellant that his trial attorneys proceeded without expert assistance is simply incorrect. Rather, the appellant's argument is essentially a request to try the case again with a different expert. Having considered the record of trial and the post-trial submissions of counsel, we find that the appellant has failed to meet his burden of showing that his counsel were in any way deficient under the standards of *Strickland*.

*Sufficiency of the Evidence to Prove Aggravated Assault*

The Government's expert testified that based on the appellant's "viral loads," the level of HIV virus in his blood, he was capable of transmitting the virus during the charged time period. The expert testified that the likelihood of transmission during unprotected vaginal intercourse was "somewhere between 1 and 10 per 10,000 exposures" to "somewhere between 10 and 20 [] per 10,000 encounters" at the "high-

---

[1] U.S. CONST. amend. VI.

end." On cross-examination, she agreed that the risk of transmission during unprotected vaginal intercourse was very small, "roughly 1 in 10,000 to 1 in 100,000 per sexual act." She also testified that condoms effectively prevent transmission "97 to 98 percent of the time"; however, there is "always a risk" whenever a male with HIV has sexual intercourse with a female. The appellant argues that this relatively low probability of transmission of the disease renders the evidence insufficient to support the findings of guilty of assault by a means likely to produce death or grievous bodily harm.

The sexual partners of the appellant perceived the risk to be of sufficient concern that they would not have engaged in sexual intercourse with him had the appellant been truthful when asked about sexually transmitted diseases. The appellant had unprotected vaginal sexual intercourse with VW on four occasions and engaged in unprotected oral sex with her on one occasion. Prior to the first time they engaged in sexual intercourse, VW was concerned about sexually transmitted diseases and she "asked him up front if he was clean," which he claimed he was. When asked if she would have engaged in sexual contact with him if he had been truthful in telling her that he knew he had tested positive for the HIV virus, she answered, "No, because I watched a brother die from AIDS. No, I wouldn't have." Another victim, DC, described that she and the appellant discussed sexually transmitted diseases. She told him that she has "a brother with AIDS and that [she] wanted to be safe because [she] know[s] what it does," but he did not tell her he was HIV positive. She testified that she trusted he was honest with her because he was in the military. DC also would not have engaged in sexual activity with him if he had told her he had tested positive for HIV. The appellant also did not tell PT that he was HIV positive before they engaged in vaginal sexual intercourse. When asked if she would have had sex with him if she knew he was HIV-positive, PT replied, "[A]bsolutely not."

For conviction of the charged aggravated assaults, the evidence must show the means used to commit the assault was "likely" to produce death or grievous bodily harm. *Manual for Courts-Martial, United States*, Part IV, ¶ 54.b.(4)(a) (2008 ed.). In *United States v. Joseph*, 37 M.J. 392, 397 (C.M.A. 1993), the predecessor to our superior court interpreted the word "likely" in the context of an aggravated assault prosecution based on HIV infection as "not the statistical probability of HIV invading the victim's body, but rather the likelihood of the virus causing death or serious bodily harm *if* it invades the victim's body." The probability of infection need only be "more than merely a fanciful, speculative, or remote possibility." *Id.* at 397 (citation and internal quotation marks omitted). The Court reaffirmed this view in *United States v. Dacus*, 66 M.J. 235 (C.A.A.F. 2008), where the majority upheld a guilty plea conviction to aggravated assault based on HIV infection despite expert testimony in sentencing that transmission of the virus was "very unlikely." The Court noted, "'Where the magnitude of the harm is great,

there may be an aggravated assault, even though the risk of harm is statistically low.'" *Id.* at 240 (quoting *United States v. Weatherspoon*, 49 M.J. 209, 211 (C.A.A.F. 1998)).[2]

With this background, we turn to whether the evidence is sufficient to support the findings of guilty of aggravated assault. We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987). "The test for factual sufficiency is whether, after weighing the evidence . . . and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *Turner*, 25 M.J. at 325) (internal quotation marks omitted).

Although the expert testified the likelihood of transmission was low, she testified the disease has no cure and without medical intervention an infected person will die of AIDS. The medical intervention is significant requiring "a lifelong commitment to taking the pills every day" with an average expense of $1,700 to $1,800 each month for the medication, an expense that does not include other necessary medical treatments. The required medicines are not without their own risk as they have "side effects and toxicities." Thus, while the likelihood of transmission is low, the likelihood of death or serious bodily harm resulting from infection is quite high. Given the extreme magnitude of potential harm and applying the standards of *Joseph* and *Weatherspoon*, the military judge sitting as the trier of fact could have found all the essential elements beyond a reasonable doubt.[3] Applying these same standards to the evidence and making allowances for not having observed the witnesses, we also are convinced of the appellant's guilt beyond a reasonable doubt.

*Consent as a Defense to Adultery*

The appellant next argues that the evidence is legally and factually insufficient to support the finding of guilty of adultery because the appellant's wife consented to and participated in the adulterous conduct. Relying on *United States v. Taylor*, 64 M.J. 416 (C.A.A.F. 2007), he argues that the crime of adultery requires a victim spouse and that a spouse who consents is not a victim. While *Taylor* involved an

---

[2] In a concurring opinion, our superior court has questioned the continued application of *United States v. Joseph*, 37 M.J. 392 (C.M.A. 1993), and similar cases, under the current state of scientific evidence regarding HIV and AIDS. *United States v. Dacus*, 66 M.J. 235, 240 n.1 (C.A.A.F. 2008) (Ryan, J., concurring). The majority opinion nevertheless approved of the military judge's use of the *United States v. Weatherspoon*, 49 M.J. 209 (C.A.A.F. 1998), standard in discussing the elements of aggravated assault based on HIV infection. *Dacus*, 66 M.J. at 238-39.

[3] The military judge found the appellant not guilty of aggravated assault based on protected oral sex which, as the expert testified, carried a "zero" percent chance of infection.

adultery charge, that holding was expressly limited to the application of the testimonial privilege: "[F]or the purposes of [Mil. R. Evid.] 504(c)(2)(A), adultery is a crime against the person of the other spouse." *Id.* at 420. The majority acknowledges the dissenting view that adultery is *not* a crime against the person or property of the spouse, but strictly construes the testimonial privilege to permit testimony by the spouse as a victim. *Id. Taylor* did not establish that consent is a defense to an adultery charge. Evaluating the legal and factual sufficiency of the evidence under *Humpherys* and *Reed* discussed above, we find the evidence sufficient to support the conviction of adultery.

## *Failure to State an Offense*

Although not challenged at trial, the appellant argues on appeal that the adultery specification fails to state an offense because it does not expressly or by necessary implication allege the terminal element required for an Article 134, UCMJ, offense. Whether a charge and specification state an offense is a question of law that we review de novo. *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006). "A specification states an offense if it alleges, either expressly or by [necessary] implication, every element of the offense, so as to give the accused notice and protection against double jeopardy." *Id.* (citing *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994)). *See also* Rule for Courts-Martial 307(c)(3).

In the case of a litigated Article 134, UCMJ, specification that does not allege the terminal element, and was not challenged at trial, the failure to allege the terminal element is plain and obvious error which is forfeited rather than waived. *United States v. Humphries*, 71 M.J. 209, 211 (C.A.A.F. 2012). The remedy, if any, depends on "whether the defective specification resulted in material prejudice to [the appellant's] substantial right to notice." *Id.* at 215. The prejudice analysis of a defective specification under plain error requires close review of the record: "Mindful that in the plain error context the defective specification alone is insufficient to constitute substantial prejudice to a material right we look to the record to determine whether notice of the missing element is somewhere extant in the trial record, or whether the element is essentially uncontroverted." *Id.* at 215-16 (citations and internal quotation marks omitted).

Here, trial defense counsel specifically offered evidence to rebut the terminal element that his actions brought discredit to the armed forces. During cross-examination of VW, trial defense counsel asked her if she knew the appellant's wife, if she knew he was married, if she thought less of him because he engaged in extra-marital sexual activity, and if the actions of the appellant made her "reflect negatively on him or the United States Air Force." Trial defense counsel also cross-examined DS on this issue. Based on trial defense counsel's questions, DS admitted that she knew he was married and in the military when she had sexual intercourse with him. Trial defense counsel also asked if she thought less of the Air Force because of him.

At the conclusion of the Government's case, trial defense counsel moved to dismiss several specifications under the Article 134, UCMJ, adultery charge, based on the spouse's consent to the appellant's extramarital sexual conduct. The Government responded by expressly arguing the terminal elements in opposition to the defense motion.

Trial defense counsel capitalized on the presentation of this evidence negating the terminal element during his closing argument. Trial defense counsel expressly argued the lack of evidence on the terminal element. He argued the Government failed to present evidence beyond a reasonable doubt on the terminal element of conduct prejudicial to good order and discipline and service discrediting. After quoting from the Military Judges' Benchbook[4] on the definition of conduct prejudicial to good order and discipline, he argued: "There has been absolutely no evidence presented in this courtroom over the last day and a half of any effect--any measurable obvious divisive effect on anybody in the military or any unit in the military." Trial defense counsel expressly argued that the prosecution failed to prove the adultery was "service discrediting" by arguing that he had elicited testimony from the witnesses that they did not think any less of him or the Air Force based on the appellant's lifestyle.

In *United States v. Tunstall*, 72 M.J. 191, 197 (C.A.A.F. 2013), our superior court upheld an adultery charge that was lacking the terminal element "where evidence in the trial record indicate[d] that the defense introduced evidence for the specific purpose of negating both theories of the terminal element of Article 134, UCMJ, and further argued that the government had not proven either terminal element during its closing argument." We find *Tunstall* to be directly applicable to this case. Thus we similarly conclude the appellant "has not met his burden to demonstrate material prejudice to a substantial right, as he did defend himself, despite the Government's error." *Id.*

*Constitutionality of the Indecent Acts Conviction*

Relying on *Lawrence v. Texas*, 539 U.S. 558 (2003), the appellant argues that his conviction of indecent acts by engaging in sexual intercourse and sodomy in the presence of others violates his constitutionally protected liberty interests. In *Lawrence*, the Court held that individuals have a liberty interest that protects consensual "private sexual conduct." *Id.* at 578. *See also Planned Parenthood v. Casey*, 505 U.S. 833, 847 (1992) ("It is a promise of the Constitution that there is a realm of personal liberty which the government may not enter."). But this liberty interest is subject to certain delineated exceptions, which include "persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused." *Lawrence*, 539 U.S. at 578.

---

[4] Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, ¶ 3-62-1, Note 2 (1 January 2010).

Here, the appellant's sexual acts with others during the charged time period also constituted an aggravated assault on victims who testified that they would not have consented to engage in sexual acts with the appellant had they known he was HIV-positive. A person cannot consent to an act that is likely to result in death or grievous bodily harm. *United States v. Bygrave*, 46 M.J. 491, 493 (C.A.A.F. 1997) (quoting *United States v. Outhier*, 45 M.J. 326, 330 (C.A.A.F. 1997)). Therefore, the appellant's conduct clearly falls outside the ambit of constitutional protection provided by *Lawrence*. *See United States v. Marcum*, 60 M.J. 198 (C.A.A.F. 2004) (applying *Lawrence* in the military context includes application of factors identified by the Supreme Court which remove sexual conduct from constitutional protection).

Furthermore, the appellant's sexual activity was not private. The appellant engaged in sexual intercourse and oral sex with DC while his wife was in the adjoining room with the door open. His wife knew that he and DC were engaging in sexual activity. Twice, the appellant had sexual intercourse with DS while her husband and the appellant's wife were in the same room. HD witnessed sexual intercourse between the appellant and two other adults, VW and CL. RD witnessed the appellant have sexual intercourse with VW in "[m]ultiple places. Mostly hotel rooms, in his own home, at different various parties, in hot tubs." BW saw the appellant have sexual intercourse in a hot tub with CL. PT engaged in sexual intercourse with the appellant while her husband and the appellant's wife were in the same hotel room. "The commission of sexual acts in the presence of a third party has been held to be sufficiently 'open and notorious' to constitute an indecent act, punishable under Article 134, UCMJ." *United States v. Goings*, 72 M.J. 202, 206 (C.A.A.F. 2013).

It is disingenuous for the appellant to now claim that his activity with his sexual partners is constitutionally protected as consensual private activity, when the activity was not private and when his partners would not have consensually engaged in sexual activity with him but for his fraudulent misrepresentations to them regarding his health status.

### *Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.[5] Articles 59(a)

---

[5] We note the overall delay of over 18 months between the time the case was docketed with this Court and completion of our first review is facially unreasonable. Because the delay is facially unreasonable, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice. *United States v. Moreno*, 63 M.J. 129, 135-36 (C.A.A.F. 2006). When we assume error, but are able to directly conclude that any error was harmless beyond a reasonable doubt, we do not need to engage in a separate analysis of each factor. *See United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). This approach is appropriate in the appellant's case. The post-trial record contains no evidence that the delay has had any negative impact on the appellant. Having considered the totality of the circumstances and the entire record, we conclude that any denial of the appellant's right to speedy post-trial review and appeal was harmless beyond a reasonable doubt.

and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c); *Reed*, 54 M.J. at 41. Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 37913 (rem)