# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, J.A. FISCHER, T.H. CAMPBELL**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**ALEXANDER E. KNOWLES**
**CRYPTOLOGIC TECHNICIAN THIRD CLASS (E-4), U.S. NAVY**

**NMCCA 201500181**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 19 March 2015.
**Military Judge:** CAPT Moira Modzelewski, JAGC, USN.
**Convening Authority:** Commandant, Naval District Washington, Washington Navy Yard, Washington, DC.
**Staff Judge Advocate's Recommendation:** LCDR J.D. Pilling, JAGCM USN.
**For Appellant:** Capt Michael Magee, USMC.
**For Appellee:** Maj Suzanne Dempsey, USMC; Maj Tracey Holtshirley, USMC.

**19 April 2016**

---------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

BRUBAKER, Chief Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of one specification of assault, eight specifications of assault consummated by a battery, and two specifications of aggravated assault in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928. The convening authority approved the adjudged sentence of three years' confinement and a bad-conduct discharge.

The appellant presents two issues: (1) whether his conviction under Specification 9 of the Charge[1] for aggravated assault is legally and factually sufficient; and (2) whether the military judge erred in instructing the members on the aggravated assault offenses. In light of our superior court's decision in *United States v. Gutierrez*, 74 M.J. 61 (C.A.A.F. 2015), we find instructional error, but that it is harmless. Finding no other error, we affirm.

**Factual and Legal Sufficiency**

The charges in this case revolve around a series of incidents where the appellant, in the course of arguments with his wife, became physically violent—including holding a knife to her; knocking her unconscious; striking her with a large, metal and plastic box fan; and dragging her down stairs. The basis for the specification at issue—Specification 9—was an incident where the appellant pinned his wife to the bed and strangled her. He used both hands to squeeze her neck and his thumbs to squeeze the middle of her throat. As the victim testified, he then started "strangling me, just kind of shaking me and really trying to put force into it. And I couldn't breathe. I was having a really hard time struggling with it."[2] This continued for what felt to her like a few minutes. She started to see black and faded in and out of consciousness.

While Specification 9 alleged intentional infliction of grievous bodily harm, to wit: unconsciousness, the members convicted on the lesser included offense of assault with a force likely to cause death or grievous bodily harm. The appellant challenges the sufficiency of the evidence to prove that his act of choking his wife was "likely" to inflict grievous bodily harm.

We review questions of legal and factual sufficiency *de novo*. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is whether "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006) (citing *Turner*, 25 M.J. at 325 and Art. 66(c), UCMJ), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. While

---

[1] We adopt the parties' reference to the numbering of the cleansed charge sheet as opposed to the original charge sheet. Specification 9 of the Charge on the cleansed charge sheet equates to Specification 14 of Charge I on the original charge sheet.

[2] Record at 213.

this is a high standard, the phrase "beyond a reasonable doubt" does not imply that the evidence must be free from conflict. *Rankin,* 63 M.J. at 557.

The appellant does not dispute that choking his wife constituted an assault consummated by a battery. He challenges only the aggravating element: that he used force in a manner *likely* to produce death or grievous bodily harm. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 54b(4)(a). In determining whether grievous bodily harm is likely, "one conception is whether grievous bodily harm is the 'natural and probable consequence' of an act." *Gutierrez*, 74 M.J. at 66 (citing *United States v. Weatherspoon*, 49 M.J. 209, 211 (C.A.A.F. 1998) and MCM, Part. IV, ¶ 54c(4)(a)(ii)). But the "ultimate standard" is "whether—in plain English—the charged conduct was 'likely' to bring about grievous bodily harm." *Id.*

We find ample evidence in the record that death or grievous bodily harm was a likely consequence of the appellant's battery of his wife. The appellant did not merely place a hand on her throat: he pinned her down, used both hands and thumbs to cut off all oxygen, and choked her long enough for her to fade in and out of consciousness. While the appellant points to a lack of medical testimony on the point, we find that under the facts of this case, a reasonable member did not need expert assistance to conclude that death or grievous bodily harm is a natural and probable—*likely*—consequence of choking an overpowered victim to unconsciousness. We, too, are convinced of this beyond a reasonable doubt.

## Instructional Error

Although he did not object at trial, the appellant now asserts that the military judge's instruction on when a force is "likely" to produce death or grievous bodily harm was plain error.

Whether the members were properly instructed is a question of law that we review *de novo*. *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014). Failure to object to an instruction at trial forfeits the issue absent plain error. *Id.* To prevail, the appellant must show that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the appellant. *Id*. at 23.

The military judge instructed the members as follows:

A force is likely to produce death or grievous bodily harm when the natural and probable results of its particular use would be death or grievous bodily harm. It's not necessary that death or grievous bodily harm actually result. . . .

The likelihood of death or grievous bodily harm is determined by measuring two factors. Those two factors are first, the risk of harm and two, the magnitude of the harm. In evaluating the risk of the harm, the risk of death or grievous bodily harm must be more than merely a fanciful, speculative or remote possibility. In evaluating the magnitude of the harm, the consequence of death or grievous bodily harm must be at least probable and not just possible, or in other words,

3

death or grievous bodily harm would be a natural and probable consequence of the accused's act.[3]

This instruction—standard at the time—was based on our superior court's decision in *United States v. Joseph*, 37 M.J. 392 (C.M.A. 1993), where it "adopted a definition of 'likely' that appears to be *sui generis* to [human immunodeficiency virus (HIV)] cases . . . ." *Gutierrez*, 74 M.J. at 66. But shortly before trial, the United States Court of Appeals for the Armed Forces (CAAF) expressly overruled *Joseph*, finding its test inconsistent with the statutory language of Article 128, Uniform Code of Military Justice. *Id.* at 68. Instead, the court emphasized that the standard "remains whether—in plain English—the charged conduct was 'likely' to bring about grievous bodily harm." *Id.* at 66.

Instructing on the repudiated *Joseph* standard was thus plain or obvious error, as the Government concedes. But turning to the final prong of the plain error test, we find that this error did not materially prejudice a substantial right of the appellant. As the *Gutierrez* court emphasized, the definition of "likely" focusing on the risk as well as the magnitude of harm was *sui generis* to one troublesome class of cases: those alleging aggravated assault by failing to inform a sexual partner of having HIV. *Id.* The present case, like *Weatherspoon*, 49 M.J. at 209, was not in this class. The likelihood of death or grievous bodily harm depended not on the now-defunct risk prong, but on the magnitude prong:

> Unlike the HIV cases, the present case focuses on the second prong of the likelihood analysis. In the present case, the risk of harm was not at issue. Like the rifle bullet that has found its mark, there was intentional, unlawful, physical contact. The only factual issue was the magnitude of the harm: whether the natural and probable consequence of appellant's choking his wife and kicking her in the face was death or grievous bodily harm. Under Article 128(b)(1), that consequence must be 'probable,' not merely 'possible.' The test for this second prong is not whether death or grievous bodily harm is 'more than merely a fanciful, speculative, or remote possibility'; that test applies only to the first prong, the risk of harm. The test for the second prong, set out in the Manual for Courts-Martial, is whether death or grievous bodily harm was a natural and probable consequence.

*Id.* at 212.

Because the risk of harm was not at issue here, instructions on that prong were—while incorrect—merely superfluous. The trial counsel treated them as such: when presenting closing argument on specifications alleging assault with a force likely to produce death or grievous bodily harm, he omitted any mention of the "more than merely a fanciful, speculative or remote possibility" language, instead emphasizing that such harm was not just possible, but probable. So too with the trial defense counsel, who argued, "The key word in this specification, members,

---

[3] Record at 352-53.

4

is 'likely.' 'Likely' does not simply mean 'possibly.' Government's correct on that."[4] He then went on to emphasize that grievous bodily harm must be a natural and probable consequence.

We are convinced that the erroneous instruction did not prejudicially impact the members' deliberations. We are also convinced that, absent the error, the members would have returned the same verdict. *Payne*, 73 M.J. at 25-26.

### Conclusion

The findings and sentence are affirmed.

Senior Judge FISCHER and Judge CAMPBELL concur.

For the Court



R.H. TROIDL
Clerk of Court

---

[4] Record at 408-09.