# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, HERRING, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant MARK V. ODIE**
**United States Army, Appellant**

ARMY 20130122

Headquarters, III Corps and Fort Hood
James L. Varley, Military Judge
Colonel Stuart W. Risch, Staff Judge Advocate (pretrial)
Colonel Richard W. Rousseau, Staff Judge Advocate (post-trial)

For Appellant: Colonel Kevin Boyle, JA; Major M. Patrick Gordon, JA; Captain Patrick A. Crocker, JA (on brief).

For Appellee: Major A.G. Courie III, JA; Major Daniel D. Derner, JA; Major Daniel M. Goldberg, JA (on brief).

13 May 2016

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MULLIGAN, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of disobeying a superior commissioned officer, two specifications of aggravated assault, two specifications of assault consummated by battery, obstruction of justice, reckless endangerment, soliciting another to commit an offense, and two specifications of communicating a threat, in violation of Articles 90, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 928, 934 (2006) [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for eight years, forfeiture of all pay and allowances, and a reduction to the grade of E-1. In accordance with the terms of a pretrial agreement, the convening authority approved the findings and the sentence, except that portion extending to confinement in excess of six years. The convening authority also credited appellant with 191 days of confinement.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises three assignments of error, two of which warrant discussion and one of which warrants relief.[1]

## BACKGROUND

At approximately 2100 hours on Friday, 27 July 2012, appellant arrived at the on-post home of SPC FT, a former girlfriend, to discuss and possibly repair their broken relationship. Appellant left the home after a brief conversation, only to return when he saw another man, SSG MH, pull up to SPC FT's house. Appellant returned with a loaded nine millimeter semi-automatic pistol. During the ensuing altercation, appellant pointed the weapon at SSG MH, who then was sitting in his car attempting to call the police. Thereafter, appellant grabbed SPC FT by the neck, thrust the loaded pistol just below her neck, and pulled the trigger. Specialist FT heard a click, but the gun did not fire.[2] Appellant fled the scene before the military police arrived.

The appellant disposed of the pistol by placing it underneath a fence that surrounded a lawn care facility located in Kouma Village, a family housing and residential complex on Fort Hood, Texas. A playground for children was located nearby and a running track surrounded the field abutting the fence. Before placing the weapon, the appellant inserted a sixteen-round magazine into the handle of the pistol, chambered a round, and set the safety to "fire."

Appellant later returned to SPC FT's house. By this time, the military police had arrived and eventually arrested the appellant. Early the next day, appellant provided the military police a statement wherein he denied assaulting anyone or having a pistol during the earlier altercation at SPC FT's residence. At approximately 1700 hours on 28 July 2012, military police located the pistol where appellant placed it under the fence.

## LAW AND DISCUSSION

### A. Appellant's Guilty Plea to Reckless Endangerment

We review a military judge's decision to accept a plea for an abuse of discretion. *United States v. Schell*, 72 M.J. 339, 345 (C.A.A.F. 2013) (citing *United States v. Inabinette,* 66 M.J. 320, 22 (C.A.A.F. 2008)). "It is an abuse of discretion

---

[1] Appellant personally raised two assignments of error pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), both of which lack merit.

[2] A subsequent examination of the pistol at the U.S. Army Criminal Investigation Laboratory (USACIL) revealed a safety feature that prevented the pistol from firing if the magazine was not fully inserted.

for a military judge to accept a guilty plea without an adequate factual basis to support it . . . [or] if the ruling is based on an erroneous view of the law." *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012) (citation omitted). In reviewing a plea, we look to the whole record in determining whether there exists a substantial basis in law or in fact for questioning the guilty plea. *Inabinette*, 66 M.J. at 322; *see also* UCMJ art. 45(a); Rule for Courts-Martial 910(e). In examining the sufficiency of a plea, we look to "the totality of the circumstances of the providence inquiry, including the stipulation of fact, as well as relationship between the accused's responses to leading questions and the full range of the accused's responses during the plea inquiry." *United States v. Nance,* 67 M.J. 362, 366 (C.A.A.F. 2009).

Appellant argues that the military judge abused his discretion by accepting appellant's plea of guilty to Specification 5 of Charge III, alleging reckless endangerment in violation of Article 134, UCMJ. We find this argument without merit, as we do not see a substantial basis in law or in fact to question the providence of appellant's plea at the time it was accepted at trial.

We, however, must address whether our superior court's decision in *United States v. Gutierrez*, decided after appellant's trial, now raises a substantial basis in law or fact to question appellant's plea to reckless endangerment.[3] 74 M.J. 61 (C.A.A.F. 2015).

The elements for reckless endangerment under Article 134, UCMJ, are:

> (1) That the accused did engage in conduct;
>
> (2) That the conduct was wrongful and reckless or wanton;
>
> (3) That the conduct was likely to produce death or grievous bodily harm to another person; and
>
> (4) That under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*Manual for Courts-Martial United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶ 100a.b. At issue here and in *Gutierrez* is the third element and the likelihood that certain conduct will produce death or grievous bodily harm.[4]

---

[3] Appellant's brief was submitted before the Court of Appeals for the Armed Forces (CAAF) rendered its decision in *Gutierrez.*

[4] Although *Gutierrez* involved an aggravated assault under Article 128, UCMJ, the

(continued . . . )

The likelihood of death or grievous bodily harm involves measuring and balancing two factors: "(1) the risk of harm and (2) the magnitude of the harm." *United States v. Dacus,* 66 M.J. 235, 238 (C.A.A.F. 2008) (quoting *United States v. Weatherspoon,* 49 M.J. 209, 211 (C.A.A.F. 1998)). Where the magnitude of harm is great, an act may be "likely" to cause death or grievous bodily harm even though the risk of harm is statistically low. *Dacus*, 66 M.J. at 240; *See Herrmann*, 2016 CCA LEXIS 240, at *11-12.

In terms of the risk of harm, at least in the area of aggravated assault and HIV transmission, CAAF repeatedly held that the risk of harm need only be "more than merely a fanciful, speculative, or remote possibility." *Weatherspoon, 49 M.J. at 211* (citations and internal quotation marks omitted). This is the same *Weatherspoon* language provided by the military judge to appellant in conducting the providence inquiry for reckless endangerment.[5] *Gutierrez* expressly overruled this standard for assessing the risk of harm. 74 M.J. at 68. "The ultimate standard, however, remains whether -- in plain English -- the charged conduct was 'likely' to bring about grievous bodily harm." *Id*. at 65. Our court has since held that "likely," even with this plain English application, is "not a preponderance standard." *Herrmann*, 2016 CCA LEXIS 240 at *18. While declining to prescribe more precision to "likely," this court:

---

(. . . continued)

court's holding applies equally to this element for reckless endangerment. *See MCM,* pt. IV, ¶ 54.c.(4)(a)(ii) and 100a.c.(5); *United States v. Herrmann*, ARMY 20131064, 2016 CCA LEXIS 240, at *11 (Army Ct. Crim. App. 18 Apr. 2016).

[5] The military judge instructed:

> The likelihood of death or grievous bodily harm is determined by the measuring of two factors. These two factors are one, the risk of harm, and two, the magnitude of harm. In evaluating the risk of harm, risk of death or grievous bodily harm *must be more than a mere fanciful, speculative, or remote possibility,* and about the magnitude of the harm, death or grievous bodily harm may be a natural, probable consequence of your conduct, not merely a possible consequence of your conduct. Whether the magnitude of the harm is great, the fact finder may find that a reckless endangerment exists, even though the risk of harm is statistically low.

(emphasis added). *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judge's Benchbook [hereinafter Benchbook], para. 3-100A-1, n.2 (1 Jan. 2010).

4

> [A]dhere[d] to the MCM's explanation that a means, force,
> or conduct is likely to produce death or grievous bodily
> harm when that is the natural and probable result or
> consequence of that particular means, force, or conduct.
> *See* UCMJ arts. 128 and 134. This "likelihood"
> determination is made utilizing a common sense approach
> and factoring in and balancing all relevant facts and
> circumstances. Ultimately, the likelihood determination
> must clear a "reasonable threshold of probability."

*Id.* at 18-19 (citing *Gutierrez*, 74 M.J. at 66).

Even though *Gutierrez* overruled language used in the military judge's instructions to the appellant concerning risk of harm, we are not automatically required to set aside appellant's guilty plea. "Where the record contains 'factual circumstances' that 'objectively support' the guilty plea to a more narrowly construed statute or legal principle, the guilty plea may be accepted." *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004). There can be little argument that "a reasonable threshold of probability" that stands somewhere below a "preponderance" is nonetheless more restrictive than "mere fanciful, speculative, or remote possibility" in determining whether harm is likely. As *Gutierrez* did not otherwise dispense with the two-pronged analysis for assessing likelihood of harm set forth in *Dacus*, we will examine appellant's case through that lens.

During appellant's providence inquiry the military judge explained:

> The question is whether under all the circumstances, your
> conduct was such a heedless nature that it made it actually
> or eminently dangerous to provide [sic] safety of others.
> When the natural or probable consequences of a particular
> act would be death or grievous bodily harm, it may be
> inferred that the conduct is likely to produce that result.

After providing elements and definitions, the military judge engaged appellant in the following colloquy:

> MJ: Do you believe your conduct was reckless and that it
> exhibited a culpable disregard for the foreseeable
> consequences to others from the act involved?
>
> Acc: Yes, sir.
>
> MJ: Why do you think that? Why do you think the
> foreseeable consequences could have resulted in a death or
> serious bodily injury --- grievous bodily injury, I guess.

5

Acc: For someone could have found that weapon, sir, and it could have been accidentally discharged.

MJ: I mean, *a child could have easily hurt themselves* [sic] with a weapon in that state, correct?

Acc: Correct, sir.

MJ: And even *an adult finding a weapon that was locked and loaded with a round in the chamber and the weapon on fire, could have easily harmed themselves* [sic] or somebody else, particularly if they didn't know how to handle a weapon, right?

Acc: Yes, sir.

MJ:  Do you think that was easily foreseeable when you placed that weapon down on the ground in the condition it was in?

Acc:  Yes, sir.

(emphasis added). And later:

MJ: Would you agree that the conduct was likely to produce death or grievous bodily harm as I've defined those terms for you to another person?

Acc: Yes, sir.

MJ: Why do you think that?  Describe for me again why you think that could have resulted in death or serious bodily harm?

Act: Sir, *a child or an untrained person could have accidentally picked up that weapon, sir, and could have pulled that --- killed themselves, pulled that trigger.*

(emphasis added).

Undoubtedly, appellant's actions created a risk of harm.  The record establishes appellant placed a loaded weapon under a fence near a playground, with a round chambered and the safety on "fire."  He further acknowledged an adult

6

untrained with the use of a pistol or a child could "easily"[6] have hurt themselves if they found the weapon in this state. While the chances of somebody finding the weapon under the fence cannot be gauged with any certainty, the risk of harm nonetheless existed and, if realized, created a real chance that the pistol would be inadvertently fired.

Appellant's narrative response to the military judge's questions leaves little question as to the magnitude of harm–to paraphrase appellant, somebody could have died. As this court suggested in *Herrmann,* factoring in the "social utility" of the act in question "can help differentiate levels of magnitude" of harm in assessing the likelihood of death or grievous bodily harm. *Herrmann*, 2016 CCA LEXIS 240 at *12-13. The placement of a loaded weapon by a children's playground serves no societal end, thus placing the magnitude of harm at the more extreme level of "magnitude" under this analysis.

Balancing the risk of harm and magnitude of harm, we find sufficient evidence on the record, to include appellant's own responses to the military judge, to establish a "reasonable threshold of probability" that appellant's actions were likely to produce death or grievous bodily harm. We therefore do not find a substantial basis in law or in fact to question appellant's plea to reckless endangerment.

## *B. Post-Trial Processing*

The convening authority took initial action on the case on 31 March 2014, 420 days after trial. Of this period, 374 days were attributable to the government. The record of trial consists of three volumes, and the trial transcript is 254 pages. Although we find no due process violation in the post-trial processing of appellant's case, we must still review the appropriateness of the sentence in light of this dilatory post-trial delay. UCMJ art. 66(c); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) ("[Pursuant to Article 66(c), UCMJ, service courts] must determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay."). *See generally, United States v. Toohey*, 63 M.J. 353, 362-63 (C.A.A.F. 2006; *United States v. Ney,* 68 M.J. 613, 617 (Army Ct. Crim. App. 2010); *United States v. Collazo,* 53 M.J. 721, 727 (Army Ct. Crim. App. 2000). After consideration of the entire record, we conclude appellant's case warrants relief in the form of a thirty-day reduction in confinement. *See Tardif*, 57 M.J. at 224.

The government took 266 days to transcribe the record of trial, and thirty-three days for the military judge to authenticate the record of trial. It also took the staff judge advocate forty-three days to complete the staff judge advocate's recommendation (SJAR) and an additional twenty days to complete the addendum

---

[6] "Easily" includes such definitions as "in an easy manner," "without trouble," and "likely." *See Random House Dictionary of the English Language*, 614 (2nd ed. 1987).

and obtain action once defense counsel submitted post-trial matters. The government's explanation for much of the delay–too many trials and not enough court reporter resources–is not compelling. *See United States v. Arriaga*, 70 M.J. 51, 57 (C.A.A.F. 2011). The unexplained delay between announcement of sentence and action is simply too long, and could "adversely affect the public's perception of the fairness and integrity of military justice system . . . ." *Ney*, 68 M.J. at 617. Thus, we find relief is appropriate under the facts of this case.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty are AFFIRMED. Given the dilatory post-trial processing, we AFFIRM only so much of the sentence as provides for a bad-conduct discharge, confinement for five years and eleven months, forfeiture of all pay and allowances, and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the sentence set aside by this decision are ordered restored. *See* UCMJ arts. 58b(c), and 75(a).

Judge HERRING and Judge BURTON concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court